[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-10504

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 11, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-00246-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIJIDO PADILLA-REYES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 11, 2001)**

Before WILSON, KRAVITCH and COX, Circuit Judges.

COX, Circuit Judge:

Brijido Padilla-Reyes (Padilla) pleaded guilty to a one-count indictment charging him with reentering the United States after deportation without the consent of the Attorney General of the United States, in violation of 8 U.S.C. § 1326. He appeals his sentence.

## I.    FACTS AND PROCEDURAL HISTORY

Prompted by reports from the Florida Department of Corrections that Padilla was a foreign-born inmate, the Immigration and Naturalization Service (INS) conducted an investigation which revealed that Padilla was in fact a native and citizen of Honduras who had previously been deported from the United States. Following an INS interview in which Padilla admitted the earlier deportation, Padilla was indicted for violation of 8 U.S.C. § 1326, which imposes criminal penalties on any alien who has been deported and who thereafter "enters, attempts to enter, or is at any time found in, the United States" without receiving permission of the Attorney General. 8 U.S.C. § 1326(a)(2). Padilla pleaded guilty to the charge.

Preparation of Padilla's pre-sentence investigation report revealed additional facts. Prior to his earlier deportation, Padilla was charged by information with violation of Florida Statute § 800.04, "Lewd, lascivious, or indecent assault or act upon or in presence of child; sexual battery." *See* FLA. STAT. ANN. § 800.04 (1987). Padilla pleaded nolo contendere to the charge, a second degree felony under Florida

2

law, and he was sentenced to one year probation with the requirement that he serve sixty days in jail. Concluding that Padilla's conviction[1] for lewd assault was an "aggravated felony" because it constituted "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), the district court applied a sixteen-level enhancement to Padilla's base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A) . Padilla objected to the enhancement, arguing that his lewd assault conviction did not fit within the "sexual abuse of a minor" category. The district court overruled Padilla's objections, applied a three-level reduction for acceptance of responsibility, and sentenced Padilla to ninety months imprisonment.

## II.    ISSUES ON APPEAL

Padilla presents two issues on appeal. Padilla challenges the district court's determination that he is subject to a sixteen-level enhancement to his base offense level based on a previous conviction for an aggravated felony. *See* United States Sentencing Commission, GUIDELINES MANUAL, § 2L1.2(b)(1)(A) (Nov. 1998). In order to resolve this issue, we must determine whether Florida Statute § 800.04 constitutes the aggravated felony  "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), as referenced by U.S.S.G. § 2L1.2. Padilla also argues that because

---

[1]    Under the provisions of the Immigration and Nationality Act, the disposition of Padilla's § 800.04 charge is a conviction. *See* 8 U.S.C. § 1101(a)(48)(A).

3

his ninety-month sentence exceeds 8 U.S.C. § 1326(a)'s statutory maximum, the sentence violates the rule established by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

## III.   STANDARD OF REVIEW

We review de novo the district court's interpretation of criminal statutes and sentencing guidelines. *United States v. Lazo-Ortiz*, 136 F.3d 1282, 1284 (11th Cir. 1998).

## IV.   CONTENTIONS OF THE PARTIES

A.   The Aggravated Felony Issue

Padilla contends that in order to determine whether violation of Florida Statute § 800.04 constitutes an aggravated felony for purposes of the sentencing enhancement of U.S.S.G. § 2L1.2(b)(1)(A), we must consider only the statutory definition of the prior conviction, and determine if the full range of conduct encompassed by the Florida lewd assault statute fits within the aggravated felony category "sexual abuse of a minor." Padilla maintains that "sexual abuse of a minor" is an ambiguous term, primarily because the language does not indicate whether physical contact is a necessary element of the offense. Because of this, Padilla argues we must look beyond the plain language to alleviate the ambiguity.

4

Padilla locates the meaning of "sexual abuse of a minor" in federal law, noting that before Congress amended § 1101(a)(43) to include this offense, it had created a comprehensive set of sexual abuse statutes elsewhere in the Code. *See* 18 U.S.C. § 2241 *et seq*. Padilla deduces that Congress had the older sexual abuse statutes in mind when it amended the aggravated felony category, and intended the meaning of "sexual abuse of a minor" to adopt the definitions in these statutes. Padilla also notes that there is no plain language in § 1101(a)(43)(A) indicating that this body of law should not apply. Finally, because the federal sexual abuse statutes all require physical contact with the victim, whereas the Florida lewd assault statute does not, Padilla concludes that § 800.04 does not categorically constitute "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43).[2]

The Government responds that there is no federal definition of "sexual abuse of a minor" in the context of aggravated felonies in the immigration laws. In support of this argument, the Government notes that over half of the listed aggravated felonies

---

[2] Padilla does not conclude, however, that § 800.04 can never be an aggravated felony for purposes of the § 2L1.2 enhancement. Citing our decision in *Ramey v. INS*, 55 F.3d 580 (11th Cir. 1995), Padilla points out that a conviction for violation of § 800.04 may qualify as an aggravated felony if it independently satisfies the definition of a "crime of violence" under § 1101(a)(43)(F), which contains the requirement that the sentence for the offense be at least one year. *See* 8 U.S.C. § 1101(a)(43)(F) (providing conviction for "crime of violence" with sentence of at least one year is an aggravated felony); *Ramsey v. INS*, 55 F.3d 580, 583 (11th Cir. 1995) (holding that Florida Statute § 800.04 is a "crime of violence" because it involves a substantial risk that physical force may be used against the victim). However, because Padilla's sentence for the lewd assault was less than one year, § 1101(a)(43)(F) is inapplicable here.

in § 1101(a)(43) contain cross-references to other sections of the United States Code, whereas the "sexual abuse of a minor" subsection does not. *See* 8 U.S.C. § 1101(a)(43)(A). From this the Government concludes that where Congress intended an aggravated felony subsection to depend on federal statutory law, it explicitly included the statutory cross-reference in the subsection. In the Government's view, absence of a cross-reference indicates an intention to rely on the plain meaning of the terms. The Government concludes that § 800.04 clearly meets the plain meaning of "sexual abuse of a minor."

B.     The *Apprendi* Issue

 Padilla contends that the statutory scheme of 8 U.S.C. § 1326 creates two separate offenses under two sections. In Padilla's view, § 1326(a) makes it illegal for a previously deported alien to reenter the United States, with a statutory maximum of two years, whereas § 1326(b)(2) makes it illegal for a previously deported alien with a prior aggravated felony conviction to reenter the United States, with a statutory maximum of twenty years. Padilla argues that the indictment simply charged him with illegally reentering the United States after having been deported, but did not charge that the deportation was subsequent to a conviction for an aggravated felony.[3]

---

[3]     The indictment did allege, however, that Padilla's reentry following deportation was "in violation of Title 8, United States Code, Sections 1326(a), (b)(2)." (R.1-1 at 2.)

6

Padilla concludes that the indictment necessarily charged the § 1326(a) offense, and not the § 1326(b)(2) offense. Because Padilla's ninety month sentence exceeds the two year statutory maximum of § 1326(a), he contends that his sentence violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. ___, 120 S. Ct. at 2362-63. Padilla argues that *Apprendi* requires vacatur of his sentence and a remand for re-sentencing within the two-year statutory maximum contained in § 1326(a).

The Government's response is simply that Padilla has left out the exception to the *Apprendi* rule, which, when the first clause is properly appended, reads "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* (emphasis added). The Government contends that the *Apprendi* exception applies, and not the rule, because the alleged omission is in fact the fact of a prior conviction. Most significantly, the Government notes that the Supreme Court has previously rejected the argument that § 1326 contains two separate offenses with separate statutory maximums rather than a single offense with

7

a sentencing factor. *See Almendarez-Torres v. United States*, 523 U.S. 224, 235, 118 S. Ct. 1219, 1226 (1998).

Anticipating this argument, Padilla notes that a sentence in *Apprendi* states that "it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested." *Apprendi*, 530 U.S. ___, 120 S. Ct. at 2362. While acknowledging that *Apprendi* explicitly held that its decision does not extend to cases where the fact is a prior conviction, *see id.*, Padilla invites us to anticipate the death-knell of *Almendarez-Torres*, and extend the logic of *Apprendi* to cases where the omitted fact is a prior conviction.

## V. DISCUSSION

### A. The Aggravated Felony Issue

The Sentencing Guidelines give a base offense level of eight for violation of 8 U.S.C. § 1326(a), unlawfully entering or remaining in the United States. U.S.S.G. § 2L.2(a). If the defendant previously was deported after a criminal conviction, whether or not the deportation was as a result of that criminal conviction, § 2L1.2 requires application of a sentencing enhancement. The enhancement is four levels if the conviction was either for a felony other than an aggravated felony or for three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses.

8

U.S.S.G. § 2L.2(a)(b)(1)(B). The enhancement is sixteen levels if the conviction was for an "aggravated felony." *Id.* § 2L.2(a)(b)(1)(A). "Felony offense" is defined in § 2L1.2 as any federal, state, or local offense punishable by imprisonment for a term exceeding one year; "aggravated felony," however, is defined by statutory reference to a subsection of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2 comment.( n.1).

The "aggravated felony" category was created in 1988, and initially included only murder, drug trafficking and weapons trafficking. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4469 (codified as amended at 8 U.S.C. § 1101(a)(43) (1994 & Supp. III 1997)). Since its enactment, Congress has expanded the range of crimes included in the "aggravated felony" category. The most recent amendments added rape and sexual abuse of a minor, while also lowering sentencing thresholds for crimes of violence and theft offenses. *See* Illegal Immigration Reform and Responsibility Act of 1996, Pub. L. 104-208, § 321, 110 Stat. 3009, 3009-546 (codified as amended in scattered sections of Titles 8 and 18 U.S.C.).

As it now stands, § 1101(a)(43) contains twenty-one categories of offenses. 8 U.S.C. § 1101(a)(43). Some of these are qualified by reference to other statutory provisions or by additional sentencing requirements. *See, e.g.* § 1101(a)(43)(B) (including "illicit trafficking in a controlled substance (as defined in section 802 of

Title 21)" as an aggravated felony); § 1101(a)(43)(G) (including "a theft offense . .

. for which the term of imprisonment [sic] at least one year" as an aggravated felony).

The "sexual abuse of a minor" subsection, § 1101(a)(43)(A), is not qualified by

reference to other statutory provisions or by sentencing requirements, and reads,

starting with the heading, "(43) The term 'aggravated felony' means– (A) murder,

rape, or sexual abuse of a minor; . . . ." *Id*. § 1101(a)(43)(A).

Florida Statute § 800.04 criminalizes sexual offenses that do not rise to the level

of rape or sexual battery and which are committed against children under the age of

sixteen. *See* FLA. STAT. ANN. § 800.04 (1987).[4] Because the statute is written in the

disjunctive, it encompasses acts involving victim contact as well as acts involving no

victim contact. *Worling v. State*, 484 So.2d 94, 94 (Fla. Dist. Ct. App. 1986). The

elements of the offense vary accordingly.[5] Thus, as Padilla contends, § 800.04 does

---

[4] At the time of Padilla's conviction the statute read as follows:
Lewd, lascivious, or indecent assault or act upon or in presence of child; sexual battery
Any person who:
(1) Handles, fondles or makes an assault upon any child under the age of 16 years in a lewd, lascivious, or indecent manner;
(2) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years; or
(3) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years
without committing the crime of sexual battery is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
Fla. Stat. § 800.04 (1987).

[5] For example, when a defendant is charged with violation of the statute for committing a lewd or lascivious act in the presence of a child, the only elements are that the

10

not in every case require physical contact with the victim. *See Ramsey v. INS*, 55 F.3d 580, 583 (11th Cir. 1995).

We begin our analysis with the plain meaning of "sexual abuse of a minor." *See United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995). Unless the language is ambiguous or the plain meaning leads to absurd results, the ordinary and everyday meaning of the statute controls. *Id*. Among the relevant definitions for abuse, Webster's includes "misuse . . . to use or treat so as to injure, hurt, or damage . . . to commit indecent assault on . . . the act of violating sexually . . . [and] rape or indecent assault not amounting to rape." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 8 (3d ed. 1981). Among the relevant definitions for sexual, Webster's includes "of or relating to the sphere of behavior associated with libidinal gratification." *Id*. at 2082. Black's Law Dictionary defines "sexual abuse" as "[a]n illegal sex act, esp[ecially] one performed against a minor by an adult." BLACK'S LAW DICTIONARY 10 (7th ed. 1999). We think the meaning of the "of a minor" portion of the phrase is fairly self-evident, and, contrary to Padilla's position, that the

---

child was under the age of sixteen and that the defendant knowingly committed a lewd or lascivious act that the child saw or sensed. *Werner v. State*, 590 So.2d 431, 435 (Fla. Dist. Ct. App. 1991). And, for example, if the violation is a sexual battery on a female child under sixteen, the elements required to be proved are that the victim was under the age of 16 years, and that the defendant committed an act upon the victim in which the sexual organ of the appellant had union with the vagina of the victim; assault is not an element of the offense. *Timot v. State*, 738 So.2d 387, 389-90 (Fla. Dist. Ct. App. 1999).

11

phrase as a whole, considered as the sum of its constituent parts, is not ambiguous.

Padilla's main contention is that the term is ambiguous because it is not clear whether physical contact is a necessary element of the offense. We think the ordinary meaning of the phrase includes acts that involve physical contact between the perpetrator and the victim as well as acts that do not. An examination of the relevant definitions noted *supra* reveals that "abuse" does not connote only physically injurious acts. Furthermore, the modifier "sexual" does not limit the phrase's scope to abuse of the physical variety. Rather than describing the form of the abuse as a "sexual" physical contact, we think the word "sexual" in the phrase "sexual abuse of a minor" indicates that the perpetrator's intent in committing the abuse is to seek libidinal gratification. *Cf. United States v. Zavala-Sustaita*, 214 F.3d 601, 604 (5th Cir. 2000) (noting in similar context that violation of a provision of the Texas Penal Code criminalizing intentional and knowing exposure of one's genitalia to a minor with intent to arouse or gratify is "'sexual' because it must have sexual arousal or gratification as its purpose"). In other words, the phrase "sexual abuse of a minor" means a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification.

12

This reading conforms with common usage, which often employs the term to describe nonphysical "sexual abuse," *see* Phil Mushnick, *Degrading for Ratings: McMahon's Sex-Laced Rant Turns on Little and Big Boys*, N.Y. POST, March 11, 2001, at 84 (describing televised nonphysical sexual abuse of female performer); Fenton Bresler, *Party Politics*, TIMES (London), December 6, 2000, at 5 (CREME) (describing nonphysical sexual abuse of constable by immediate superior), as well as comprehending the more technical usage employed by researchers in the field. *See* NATIONAL CENTER ON CHILD ABUSE AND NEGLECT, HHS, SEXUAL ABUSE OF CHILDREN: SELECTED READINGS 1 (1980) (defining child sex abuse as "contacts or interactions between a child and an adult when the child is being used as an object of gratification for adult sexual needs or desires."). The conclusion that "sexual abuse of a minor" is not limited to physical abuse also recognizes an invidious aspect of the offense: that the act, which may or may not involve physical contact by the perpetrator, usually results in psychological injury for the victim, regardless of whether any physical injury was incurred. *See Zavala-Sustaita*, 214 F.3d at 605 (citing *People v. Stoddard*, 38 Cal. Rptr. 407, 408 (Cal. Dist. Ct. App. 1964) for proposition that even with no likelihood of physical contact, threat of psychological trauma from sexual abuse of a minor can be as significant a menace as probable physical injury).

We find that the plain meaning of § 1101(a)(43)(A) is unambiguous, but turn next to Padilla's suggestion that Congress made the definition of "sexual abuse of a minor" in the Immigration and Nationality Act dependent on other sections of the Code. As we noted earlier, § 1101(a)(43) contains twenty-one categories of offenses, and the clear majority of the offense descriptions include cross-references to other Code sections.[6]  Because it is evident that where Congress intended an aggravated felony subsection to depend on federal statutory law it explicitly included the statutory cross-reference, we conclude that the lack of an explicit statutory reference in the § 1101(a)(43)(A) subsection indicates Congress's intent to rely on the plain meaning of the terms. Other circuits that have reached this issue have come to the same conclusion. *See Zavala-Sustaita*, 214 F.3d at 606; *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999).

Having determined that the phrase "sexual abuse of a minor" is not ambiguous and that Congress did not intend to rely on other statutory provisions for its definition, we conclude that the ordinary, common and contemporary meaning of "sexual abuse

---

[6]     *See, e.g.* 8 U.S.C. § 1101(a)(43)(B) (including "illicit trafficking in a controlled substance (as defined in section 802 of Title 21)" as an aggravated felony); § 1101(a)(43)(C) (including "illicit trafficking in firearms or destructive devices (as defined in section 921 of Title 18) or in explosive materials (as defined in section 841(c) of that title)" as an aggravated felony); § 1101(a)(43)(D) (including "an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000" as an aggravated felony).

14

of a minor" in § 1101(a)(43) includes a violation of Florida Statute § 800.04, with or without victim contact.  Because a violation of § 800.04 is "sexual abuse of a minor," the district court did not err in applying a sixteen-level enhancement for a prior conviction for an aggravated felony pursuant to U.S.S.G. § 2L.2(b)(1)(A).

B.    The *Apprendi* Issue

Padilla contends for the first time in a supplemental brief that his sentence is in violation of the holding of  *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).   However, because Padilla did not raise this issue in his initial brief to this court, we apply the rule that parties cannot properly raise new issues at supplemental briefing, even if the issues arise based on intervening decisions or new developments cited in supplemental authority.  *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000).  Because this issue is raised for the first time in supplemental briefing, we deem it waived.  *Id.* at 830-31.

## VI.    CONCLUSION

Because a violation of Florida Statute § 800.04 qualifies as "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), the district court did not err in applying a sixteen-level enhancement for a prior aggravated felony conviction pursuant to U.S.S.G. § 2L.2(b)(1)(A).  Because Padilla raises the *Apprendi* issue for the first time

15

in supplemental briefing, we deem it waived.  For the foregoing reasons, the judgment

of the district court is AFFIRMED.

AFFIRMED.