PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

RAUL DIAZ-IBARRA, a/k/a Raul Diaz
Ibarra, a/k/a Raul Diaz, a/k/a Raul
Ibarra-Diaz, a/k/a Raul Gonzales,
a/k/a Ivarra Raul Diaz, a/k/a Rafael
Diaz-Iberra, a/k/a Raul Moralez,
　　　　　　*Defendant-Appellant.*

No. 07-4420

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:06-cr-00438-CMH)

Argued: January 31, 2008

Decided: April 11, 2008

Before WILLIAMS, Chief Judge, and MOTZ and
KING, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Motz and Judge King joined.

---

## COUNSEL

**ARGUED:** Nia Ayanna Vidal, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Kyle Hansen,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alan H. Yamamoto, Assistant Federal Public Defender, Sapna Mirchandani, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

---

## OPINION

WILLIAMS, Chief Judge:

In this appeal we must determine whether a conviction under former Georgia Code Ann. § 16-6-4 (1992) for felony attempted child molestation qualifies as a "crime of violence" within the meaning of U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) (2006). We hold that it does. A violation of former Georgia Code Ann. § 16-6-4 categorically constituted "sexual abuse of a minor," which the Sentencing Guidelines define as a "crime of violence." We therefore affirm Diaz-Ibarra's sentence.

### I.

Raul Diaz-Ibarra is a native and citizen of Mexico and an illegal alien in the United States. In August 1992, a Clayton County, Georgia grand jury indicted him on two counts of felony attempted child molestation, in violation of Ga. Code Ann. § 16-6-4. At the time, § 16-6-4 provided that "[a] person commits the offense of child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of 14 years with the intent to arouse or satisfy the sexual desires of either the child or the person." Ga. Code Ann. § 16-6-4 (1992).[1] The indictment charged that, on two occasions and with two different children, Diaz-Ibarra "at-

---

[1]The current version of Georgia Code Ann. § 16-6-4 is substantively the same as the version under which Diaz-Ibarra was convicted, except that the current version applies if the victim was under "16 years of age." Georgia Code Ann. § 16-6-4 (2006).

tempted an immoral and indecent act" with a "child under 14 years of age, with intent to arouse and satisfy the sexual desires of said accused by offering [the child] a cigarette if she would remove her clothes and show the accused her 'p-ssy.'" (J.A. at 30.) Diaz-Ibarra pleaded guilty to both counts, and the state court sentenced him to one year imprisonment for each conviction, with the sentences to be served concurrently.

On January 24, 1995, an Immigration Judge ordered that Diaz-Ibarra be deported to Mexico. Diaz-Ibarra was deported the next day, but between 1995 and 2006, he illegally reentered the United States at least twice. During his illegal tenures in the United States, Diaz-Ibarra was convicted of a number of state crimes, including: (1) shoplifting (in both Georgia and South Carolina); (2) simple battery (Georgia); (3) possession of cocaine (Virginia); (4) theft (Maryland); and (5) taking indecent liberties with a child (Virginia).[2]

On November 1, 2006, the Virginia Department of Corrections contacted federal immigration agents and informed them that Diaz-Ibarra was in Virginia's custody but would soon be released. On December 7, 2006, a federal grand jury sitting in the Eastern District of Virginia indicted Diaz-Ibarra, charging him with being found in the United States after having been deported subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C.A. §§ 1326(a) and (b)(2) (West 2005). Diaz-Ibarra pleaded guilty to the indictment without the benefit of a written plea agreement.

Thereafter, a probation officer prepared a presentence report ("PSR") for Diaz-Ibarra. The PSR recommended an advisory Guide-

---

[2]Diaz-Ibarra pleaded guilty to the indecent liberties charge. According to the presentence report ("PSR") prepared in this case, Diaz-Ibarra

> put the 7-year-old female victim on his lap and proceeded to inappropriately touch her in front and back several times on the outside of her pants. [He] then attempted to put his hand into the victim's pants, at which time she yelled "no" and ran to her father. [Diaz-Ibarra] then fled the residence.

(J.A. at 70.) Diaz-Ibarra was originally charged with aggravated sexual battery but pleaded guilty to taking indecent liberties with a child.

lines range of 70 to 87 months' imprisonment. As part of the Guidelines range calculation, the probation officer applied a sixteen-level enhancement to Diaz-Ibarra's base offense level based on his conclusion that Diaz-Ibarra's 1992 Georgia convictions for felony attempted child molestation constituted "crimes of violence" under Guideline § 2L1.2(b)(1)(A)(ii).

Both before and at his sentencing hearing, Diaz-Ibarra objected to the PSR's characterization of his 1992 Georgia convictions as "crimes of violence." Although he conceded that the convictions supported an eight-level enhancement under § 2L1.2(b)(1)(C) because they qualified as "aggravated felonies,"[3] Diaz-Ibarra contended that the sixteen-level enhancement was improper because his offenses "involved no physical contact of any kind" and were not "violent in nature." (J.A. at 18.) The district court overruled Diaz-Ibarra's objection, concluding that application of the § 2L1.2(b)(1)(A)(ii) enhancement was warranted because Diaz-Ibarra's 1992 convictions for felony attempted child molestation qualified as "crimes of violence." Accordingly, the district court sentenced Diaz-Ibarra to 78 months' imprisonment, within the recommended advisory Guidelines range.

Diaz-Ibarra timely appealed. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2000) and 18 U.S.C.A. § 3742(a) (West 2000 & Supp. 2006).

## II.

## A.

If the end point of a sentencing proceeding is the district court's selection of a "reasonable" sentence, the starting point, as the Supreme Court recently reiterated, is the correct calculation of the applicable Guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). An error in the calculation of the applicable Guidelines

---

[3]Application of an eight-level enhancement would have yielded a Guidelines range of 30 to 37 months' imprisonment, much lower than the range of 70 to 87 months' imprisonment recommended in the PSR.

range, whether an error of fact or of law, infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court, and makes a sentence procedurally unreasonable even under our "deferential abuse-of-discretion standard." *Gall*, 128 S. Ct. at 591; *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

This appeal focuses on the starting point of Diaz-Ibarra's sentencing: he claims that the district court incorrectly calculated his advisory Guidelines range. Specifically, Diaz-Ibarra contends (as he did below) that the district court erred in applying the sixteen-level enhancement under Guideline § 2L1.2(b)(1)(A)(ii) because his 1992 Georgia convictions for felony attempted child molestation do not qualify as "crimes of violence." Of course, whether the district court erred in its characterization of Diaz-Ibarra's crimes as "crimes of violence" is a question of law that we review *de novo*. *United States v. Smith*, 359 F.3d 662, 664 (4th Cir. 2004).

### B.

For defendants like Diaz-Ibarra who are convicted of unlawfully entering or remaining in the United States, the Sentencing Guidelines mandate a sixteen-level offense level enhancement if the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Application Notes to § 2L1.2 define "crime of violence" as follows:

> any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, *sexual abuse of a minor*, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. 3 (emphasis added).

On appeal, as they did below, the parties focus their arguments on whether Diaz-Ibarra's 1992 Georgia convictions for felony attempted child molestation amounted to "sexual abuse of a minor." We think this focus on "sexual abuse of a minor" is appropriate, for violations of Ga. Code Ann. § 16-6-4 do not fit within any other specific criminal conduct listed in the Guidelines definition of "crime of violence." Our discussion will thus center on whether Diaz-Ibarra's crimes constituted "sexual abuse of a minor."

To make this determination, we apply the categorical approach set forth in the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990). *See also Shepard v. United States*, 544 U.S. 13, 17-18 (2005) (describing *Taylor*'s categorical approach). Under *Taylor*, we look only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a "crime of violence." *Taylor*, 495 U.S. at 599-601. *Taylor* does not require that we strain credulity or apply our "legal imagination" to the statute's language to arrive at some violation of the statute that would not qualify as a "crime of violence." *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007). Rather, there must be "a realistic probability, not a theoretical possibility," that the state would apply its statute to conduct that falls outside the definition of "crime of violence." *Id.*; *James v. United States*, 127 S. Ct. 1586, 1597 (2007).

In a "narrow range of cases," however, resort to the statute of offense and fact of conviction will not confirm the predicate nature of the state crime. *Taylor*, 495 U.S. at 602. In those cases where the state statute is categorically overbroad — that is, where it is evident from the statutory definition of the state crime that some violations of the statute are "crimes of violence" and others are not — we apply what sometimes is referred to as the "modified" categorical approach, which was also set forth in *Taylor* and later discussed in *Shepard*. *Soliman v. Gonzales*, 419 F.3d 276, 285 (4th Cir. 2005). Under the "modified" categorical approach, we determine whether a defendant's specific conduct qualifies as a "crime of violence" by looking "to the terms of the charging document" and, if necessary in a nonjury case, to "the terms of a plea agreement," the "transcript of colloquy between judge and defendant," or "some comparable judicial record" revealing the "factual basis for the plea." *Shepard*, 544 U.S. at 26. In

*Shepard*, the Supreme Court confirmed that the limits on the type of evidence that we may consider under the "modified" categorical approach are of constitutional dimension: they prevent appellate courts from usurping the jury's role (and thus violating the defendant's Sixth Amendment rights) by finding facts about a past crime under the guise of determining the nature of the crime. *Id.* at 24-26.

With this framework in place, we turn to consider whether Diaz-Ibarra's 1992 Georgia convictions for felony attempted child molestation constituted "sexual abuse of a minor," and thus qualify as "crimes of violence" under the Sentencing Guidelines.

C.

Before we can determine whether Diaz-Ibarra's crimes constituted "sexual abuse of a minor," however, we must know what "sexual abuse of a minor" means. Because the Sentencing Guidelines do not define the phrase, we interpret it by employing the common meaning of the words that the Sentencing Commission used. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." (internal quotation marks omitted)). Our interpretive task is streamlined here because Diaz-Ibarra concedes that a violation of former Ga. Code Ann. § 16-6-4 by definition was "sexual" in nature and involved a minor. He could hardly argue otherwise; the common meanings of "sexual" — "of or relating to the sphere of behavior associated with libidinal gratification," *Webster's Third New Int'l Dictionary* 2082 (1986) — and "minor" — a word whose meaning is fairly self-evident — cover the conduct prohibited by the statute, which criminalized child molestation and applied only if the victim was under 14 years of age. This leaves us only to determine the meaning of "abuse" as that term is used in the phrase "sexual abuse of a minor," and then to consider the phrase as a whole to arrive at its meaning.

We begin with dictionary definitions of the word "abuse." *See United States v. Izaguirre-Flores*, 405 F.3d 270, 275 (5th Cir. 2005) (per curiam) (looking to dictionary definitions to define "sexual abuse of a minor"); *United States v. Padilla-Reyes*, 247 F.3d 1158, 1163

(11th Cir. 2001) (same); *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999) (same). *Black's Law Dictionary* defines "abuse" as "[a] departure from legal or reasonable use"; "misuse"; "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual or physical injury." *Black's Law Dictionary* 10 (8th ed. 2004). Similarly, *Webster's* defines "abuse" as "improper or incorrect use"; "misuse"; "application to a wrong or bad purpose"; "the act of violating sexually." *Webster's Third New Int'l Dictionary* 8. These definitions reveal that, at the highest level of generality, "abuse" means misuse or use for an incorrect or bad purpose.

In addition to dictionary definitions, our understanding of "sexual abuse of a minor" must also take into account recent changes in the Guidelines definition of "crime of violence." Until 2002, the Application Notes to § 2L1.2 defined "crime of violence" as follows:

> [A]n offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 2L1.2 cmt. n.1 (2002). Concerned that this "definition often led to confusion over whether the specified offenses listed in that definition, particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another,'" U.S.S.G. Amendment 658 (2003), in 2003 the Sentencing Commission amended the definition of "crime of violence" to read as follows:

> any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, *sexual abuse of a minor*, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1 (2003).

In amending the definition of "crime of violence," the Sentencing Commission wanted to "make[ ] clear the enumerated offenses are always 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. Amendment 658. Thus, it is clear that a crime that otherwise qualifies as "sexual abuse of a minor" will not escape that designation simply because it does not require the use, or threatened use, of physical force against another.

Our discussion to this point has not covered contentious ground, for the parties generally agree that "sexual abuse of a minor" involves the misuse or mistreatment of a minor and that it does not require the use of physical force. They part ways, however, over whether "sexual abuse of a minor" requires some physical or psychological injury to the child. Diaz-Ibarra claims that it does; the Government claims that it does not.[4] We agree with the Government.

We begin by noting that the almost irresistible inference to be drawn from the Sentencing Commission's amendment to the Guidelines definition of "crime of violence" is that "sexual abuse of a minor" does not require physical injury to the abused. If offenses that do not involve the use, or threatened use, of force may qualify as "sexual abuse of a minor," then it stands to reason that "sexual abuse of a minor" does not *per se* require *physical* injury to the abused, even if such injury is, unfortunately, common.

Quite apart from this strong clue to the meaning of "sexual abuse of a minor," we think that the ordinary meaning of the phrase "sexual abuse" confirms that no physical or psychological injury is required for the abuse to be complete. Employing the common meaning of the words "sexual" and "abuse," the phrase "sexual abuse" means the use or misuse of a person for purposes of sexual gratification. The clear

---

[4]Diaz-Ibarra does not claim that "sexual abuse of a minor" requires physical contact with the minor. Indeed, "the modifier 'sexual' does not limit the phrase's scope to abuse of the physical variety." *United States v. Padilla-Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001).

focus of the phrase is on the *intent* of the abuser — sexual gratification — not on the *effect* on the abused. However one styles it, "sexual abuse" is an intent-centered phrase; the misuse of the child for sexual purposes completes the abusive act.

We are not alone in this conclusion. In *Baron-Medina*, the Ninth Circuit defined "sexual abuse of a minor" as "[t]he use of young children for the gratification of sexual desires." 187 F.3d at 1147. In doing so, the court held that the effect on the victim is irrelevant, *id.* at 1147, and that "the use of young children as objects of sexual gratification . . . constitutes maltreatment, no matter its form," *id.* Likewise, in *Padilla-Reyes*, the Eleventh Circuit, focusing on the perpetrator's intent, defined "sexual abuse of a minor" as "a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." 247 F.3d at 1163. Although the court noted that sexual abuse "*usually* results in psychological injury for the victim, regardless of whether any physical injury was incurred," *id.* (emphasis added), it did not engraft such injury into the definition of "sexual abuse of a minor." These courts share our view that once a defendant misuses the minor with the intent to achieve sexual gratification, the act of abuse is complete, irrespective of whether the minor suffered some physical or psychological injury.

The contrary conclusion — that "sexual abuse of a minor" requires, at a minimum, some psychological injury to the child —would enmesh the courts in thorny issues of psychology and perhaps insulate some of the most reprehensible forms of sexual molestation of children from enhancement under § 2L.1(b)(1)(A)(ii). First, it would be difficult to determine in many cases whether a sexual crime necessarily results in psychological injury to the child. Consider, for instance, the molester who chooses as his victim a very young child. The child may be "too young to understand the nature of [the molester's] advances," *Baron-Medina*, 187 F.3d at 1147, but is the child too young to suffer some minimal psychological injury?[5] We are confident that the Sentencing Commission did not intend the application of § 2L1.2(b)(1)(A)(ii) to turn on whether judges have a subscription

---

[5]We think it reasonable to infer some psychological injury to the child from the act of sexual abuse, but this may not be in keeping with the scientific data.

to the American Journal of Psychology, as we are confident that the Commission did not intend application of the enhancement to depend on whether the Government or the defendant wins in a battle of psychology experts.

This illustration also highlights another conceptual problem with requiring some injury to the child, be it physical or psychological, for "sexual abuse of a minor" to have occurred. Such a requirement would potentially exonerate certain defendants from application of § 2L1.2(b)(1)(A)(ii)'s sixteen-level enhancement simply because they chose to commit their sexually-exploitive act in the presence of or to a child too young to understand the nature of the defendant's perverted act, and thus perhaps too young to suffer some psychological injury. In our view, this result is more than just anomalous; it is absurd. Instead, we believe that "a sexual abuser is guilty of 'sexual abuse of a minor' even if he chooses very young victims, molests sleeping children, or otherwise conceals his lewd intent from the victims." *United States v. Baza-Martinez*, 481 F.3d 690, 692 (9th Cir. 2007) (Graber, J., dissenting from the denial of rehearing en banc).

We recognize, as Diaz-Ibarra points out, that in *United States v. Baza-Martinez*, 464 F.3d 1010 (9th Cir. 2006), another panel of the Ninth Circuit held that physical or psychological injury to the child is required for "sexual abuse of a minor" to have occurred.[6] *Id.* at 1017. This ruling provoked a vigorous dissent from the denial of rehearing en banc that faulted the *Baza-Martinez* court for failing to

---

[6]It appears that the Fifth Circuit also requires some physical or psychological injury to the child for "sexual abuse of a minor" to have occurred. In *United States v. Izaguirre-Flores*, 405 F.3d 270 (5th Cir. 2005), the court, citing to the Ninth Circuit's definition of "sexual abuse of a minor" in *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999), and to the Eleventh Circuit's decision in *Padilla-Reyes*, 247 F.3d at 1163, held that "[g]ratifying or arousing one's sexual desires in the actual or constructive presence of a child is sexual abuse of a minor." *Izaguirre-Flores*, 405 F.3d at 275. We agree with this definition. Earlier in the opinion, however, the *Izaguirre-Flores* court cited approvingly to an earlier Fifth Circuit decision holding that "'abuse' involve[s] either physical or psychological harm to the minor." *Id.* To the extent that the Fifth Circuit defines "sexual abuse of a minor" to require at least some psychological injury to the child, we disagree with the court's definition.

follow the circuit precedent of *Baron-Medina* and for ignoring the holdings of the Supreme Court and other circuits. *Baza-Martinez*, 481 F.3d at 690-94 (Graber, J., dissenting from the denial of rehearing en banc). We, of course, are not bound by either *Baron-Medina* or *Baza-Martinez*, but we believe that the *Baron-Medina* court got it right.

We therefore conclude, in keeping with *Baron-Medina* and the Eleventh Circuit's decision in *Padilla-Reyes*, that "sexual abuse of a minor" means the "perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." *Padilla-Reyes*, 247 F.3d at 1163.

### D.

Having arrived at the meaning of "sexual abuse of a minor," we turn, as we must, to our application of *Taylor*'s categorical approach in order to determine whether a violation of former Ga. Code Ann. § 16-6-4 categorically comes within the definition of that phrase. This approach requires us to consider whether the full range of conduct covered by the statutory language, including the most innocent conduct proscribed by the statute, qualifies as "sexual abuse of a minor." *United States v. Pierce*, 278 F.3d 282, 288 (4th Cir. 2002)(stating that, under the categorical approach, we "must examine the offense as a *category* of criminal conduct defined by the statute and not 'the particular facts underlying [the defendant's] convictions'" (quoting *Taylor*, 495 U.S. at 600) (emphasis in original)). Only if we determine that the statute is categorically overbroad, that is, if the statute covers some crimes that are "crimes of violence" and others that are not, can we apply the "modified" categorical approach and look beyond the statute of conviction to the charging documents in order to determine whether a crime was a "crime of violence." *Taylor*, 495 U.S. at 602.

At the time of Diaz-Ibarra's convictions, Ga. Code Ann. § 16-6-4 provided that "[a] person commits the offense of child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of 14 years with the intent to arouse or satisfy the sexual desires of either the child or the person." Ga. Code Ann. § 16-6-4. As noted above, Diaz-Ibarra concedes that the statute facially encompasses both the "sexual" and "minor" components of the phrase "sexual abuse of a minor." The only question that remains

is whether the statute categorically involves "abuse." We hold that it does.

Georgia courts have "strictly construed" § 16-6-4 to require that the molestative act occur in the presence of the child *and*, it appears, that the child be aware of the perpetrator's presence. *See, e.g., Vines v. State*, 499 S.E.2d 630, 631 (Ga. 1998) (holding that "the victim and the accused must be together in order for the crime of 'child molestation' to be committed"). For example, in *Rainey v. State*, 584 S.E.2d 13 (Ga. Ct. App. 2003), the defendant stood in the window of his house nude from the waist down, moved his body in a jerking motion, and began to masturbate as the minor victim walked home from school on the street below. *Id.* at 14. When the victim arrived at her home across the street, she went to the window to confirm what she had seen. The defendant noticed the victim looking outside, stood up, and continued his masturbatory act. *Id.* Construing the statute "strictly," the Georgia Court of Appeals upheld the defendant's conviction under § 16-6-4, holding that the statute is violated "where the child can see the person and the person is aware of the presence of the child" when he commits his immoral or indecent act. *Id.*

Similarly, in *Arnold v. State*, 545 S.E.2d 312, 314 (Ga. Ct. App. 2001), the defendant stood in his apartment doorway and asked an 8-year-old girl who lived across the hallway whether she wanted "to see something." *Id.* at 314. When the girl responded in the affirmative, the defendant put his hand on his genitals, unbuckled his belt, and began to unzip his pants. The girl averted her eyes as the defendant exposed his penis to her. *Id.* The Georgia Court of Appeals affirmed the defendant's conviction under § 16-6-4, concluding that the defendant's "act of intentionally exposing his penis in the child's presence to satisfy his own sexual desires was sufficient to support the jury's verdict." *Id.* at 315-16; *see also Grimsley v. State*, 505 S.E.2d 522 (Ga. Ct. App. 1998) (upholding convictions under § 16-6-4 when the defendants, a married couple, entered a living room where five children ages 9 to 14 were playing video games and had sexual intercourse in front of the children); *Stroeining v. State*, 486 S.E.2d 670 (Ga. Ct. App. 1997) (upholding defendant's conviction under § 16-6-4 for forcing his 12-year-old stepdaughter to watch a pornographic video with him). Conversely, in *Vines*, the Supreme Court of Georgia reversed the defendant's conviction under § 16-6-4 because the defen-

dant's only contact with his victim was by telephone. 499 S.E.2d at 632.

These cases are typical of the kind of conduct to which Georgia Code Ann. § 16-6-4 is applied: a defendant who is in a child's presence must commit some immoral or indecent act with the intent to gratify his own sexual desires or the desires of the child (and even if the latter, the strong implication is that the defendant himself receives some sexual gratification from the child's arousal), and the child must be at least minimally aware of the defendant's presence. Accordingly, there simply is not "a realistic probability" that the state would apply Ga. Code Ann. § 16-6-4 to conduct that falls outside our definition of "sexual abuse of a minor." *Duenas-Alvarez*, 127 S. Ct. at 822.

We therefore hold, looking only to the statutory definition of the offense and the fact of Diaz-Ibarra's conviction, that a violation of former Ga. Code Ann. § 16-6-4 constituted "sexual abuse of a minor" and in turn qualifies as a "crime of violence" under Guideline § 2L1.2(b)(1)(A)(ii).[7]

---

[7]Even if we were to conclude that a violation of former Ga. Code Ann. § 16-6-4 does not categorically constitute "sexual abuse of a minor," affirmance of Diaz-Ibarra's sentence would still be in order. Applying the so-called "modified" categorical approach, his 1992 Georgia convictions undoubtedly qualify as "sexual abuse of a minor." As described above, when a state statute does not on its face confirm the predicate status of a state crime, we are permitted to examine "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record" to determine whether the state conviction qualifies as a "crime of violence." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

The state-court indictment against Diaz-Ibarra confirms the predicate nature of his convictions. On two occasions, Diaz-Ibarra offered a cigarette to girls under 14 years of age if they would pull down their pants and show him their "p-ssy." (J.A. at 30.) This clearly amounted to misuse or maltreatment of a minor for a purpose associated with sexual gratification. Diaz-Ibarra argues that his victims may not have understood that "p-ssy" is a slang term for the vagina, but even assuming that this is true, the girls certainly understood that Diaz-Ibarra was asking them to pull their pants down.

## III.

In sum, we hold that "sexual abuse of a minor" means a defendant's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification. In light of this definition, a violation of former Ga. Code Ann. § 16-6-4 categorically constituted "sexual abuse of a minor" because every violation of the statute necessarily involved a defendant's commission of an immoral or indecent act in a child's presence with the intent to arouse either the defendant or the child. Accordingly, Diaz-Ibarra's sentence is

*AFFIRMED*.