DAVIS, Circuit Judge,
concurring:
Today’s decision is compelled by United States v. Diaz-Ibarra, 522 F.3d 343, 352 (4th Cir.2008), the case in which we described “sexual abuse of a minor” for purposes of identifying “a crime of violence” under U.S. Sentencing Guideline § 2L1.2(b)(l)(A)(ii) (the reentry Guideline), to mean a “perpetrator’s physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification.” (Quotations and citation omitted). I use the term “describe” rather than “define” quite purposefully. This is because in Diaz-Ibarra, rather than undertake to “define” a generic crime of sexual abuse of a minor by setting out a list of elements of such a hypothetical generic crime, we simply engaged in dictionary surfing to arrive at an expansive description of what we think such a crime might cover. Today’s decision demonstrates the limitlessness of our Circuit’s conception of “sexual abuse of a minor”; accordingly, I respectfully submit that the time has come to reconsider Diaz-Ibarra.
There are several discrete problems with Diaz-Ibarra’s construction of “sexual abuse of a minor.”
First, it is untethered from the very term it is ultimately intended to define: “crime of violence.” U.S.S.G. § 2L1.2(b)(l)(A)(ii) (emphasis added). “Nonphysical misuse or maltreatment” certainly includes conduct that does not involve physical force with the intent to cause harm, and therefore the definition effectively renounces “violence,” the very word it seeks to define. See Black’s Law Dictionary (9th ed.2009) (defining “violence” as “[t]he use of physical force, usu. accompanied by fury, vehemence, or outrage; esp., physical force unlawfully exercised with the intent to harm”). There is no more probative evidence of this than a sample of cases involving North Carolina’s *956 indecent liberties statute, N.C. Gen.Stat. § 14-202.1(a). A defendant who secretly videotapes a minor undressing when they are not in the same room, State v. McClees, 108 N.C.App. 648, 654, 424 S.E.2d 687, 690-91 (1993), or who has a sexually explicit conversation with a minor over the phone, State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 648 (2003), or who hands a sexually explicit note to a minor soliciting her (unsuccessfully) to have sex with him for $10, State v. McClary, 198 N.C.App. 169, 679 S.E.2d 414, 418 (2009), is not guilty of a crime of violence,[1] or indeed, even engaged in conduct in which violence against a victim is imminently likely.[2] Hereafter, however, convictions for all of these acts will be treated categorically as sexual abuse of a minor and thus as a crime of violence under our application of Diaz-Ibarra to today’s case.[3]
We declined in Diaz-Ibarra to derive a definition of “sexual abuse of a minor” from a concern about violence and physical force because the Sentencing Commission had earlier amended the Commentary to make clear that the absence of physical (violent) force did not preclude “sexual abuse of a minor” from qualifying as a “crime of violence.” Diaz-Ibarra, 522 F.3d at 349-50. Presumably, the reason for this was to give adjudicative power to the Guideline’s “force clause” separate and apart from the listed Guideline crimes;[4] the resulting inference was that “sexual abuse of a minor” does not require “use of physical force against the person of another” to- qualify as a crime of violence. Id. Similarly, and equally without controversy, *957 one can agree that “sexual abuse of minor” does not require that the victim suffer an identifiable injury. Id. at 350-51.
Surely, however, there must actually be a victim of some crime of violence, and that victim must suffer maltreatment of a sort that is something more than the shock resulting from a sexually-explicit telephone conversation. See State v. Brown, 162 N.C.App. 333, 590 S.E.2d 433, 436 (2004) (“Our holding in Every[, 578 S.E.2d at 647-49] stands for the proposition that repeated, graphic, and explicit sexual conversations over the phone concurrent with indicia of masturbation is sufficient to allow a jury to conclude such actions amount to taking indecent liberties.”).
Thus, even if in Diaz-Ibarra we were correct in our assessment of the Sentencing Commission’s intent, we are precluded from defining “sexual abuse of a minor” in a way wholly untethered from the Guideline text — and that is so even if the Commentary mandates such a result. See United States v. Peterson, 629 F.3d 432, 435 (4th Cir.2011) (noting that Commentary inconsistent with the Guideline text would be rendered non-binding).
Post-Diaz-Ibarra case law from the Supreme Court sheds some light on the interpretive limits that the word “violence” places on our construction of these listed Guideline crimes. In Johnson v. United States, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), the Court, in defining the term “physical force” as employed in the “force clause” of the Armed Career Criminal Act,[5] rejected the Government’s contention that “physical force” should be interpreted to. include de minimis force as required by the common law of battery; the Court stated that “[h]ere we are interpreting the phrase ‘physical force’ as used in defining not the crime of battery, but rather the statutory category of ‘violent felon[ies].’ ” Id. at 140, 130 S.Ct. 1265. It concluded that “in the context of a statutory definition of ‘violent felony,’ the phrase ‘physical force’ means violent force — that is, force capable of causing physical pain or injury to another person.” Id. See also Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (“[W]e cannot forget that we ultimately are determining the meaning of the term ‘crime of violence.’ The ordinary meaning of this term ... suggests a category of violent, active crimes[.]”); James v. United States, 550 U.S. 192, 193, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (pre-Diaz-Ibarra ).In other words, Johnson should be understood as standing for. a principle of statutory construction that the Supreme Court has made particularly salient in federal sentencing cases: .specific terms that qualify the more general are still cabined by the plain meaning of the general term. Applied here, Johnson’s teaching buttresses the point that “sexual abuse of a minor” qualifies the term “crime of violence,” and therefore must be cabined by the operative term: violence.
Second, Diaz-Ibarra’s description of “sexual abuse of a minor” captures conduct that is not “sexual abuse.” Diaz-Ibarra reduces “sexual abuse of a minor” into a crime entirely focused on the defendant’s intent, 522 F.3d at 350, and thereby erases from the analysis factors that are typically *958 understood as critical to defining -sexual abuse- of minors, such as the severity of the conduct, the defendant’s presence, the degree of the child’s involvement and awareness, coercion, the absence of consent, and the existence of an injury to the victim. See David Finkelhor, Current'Information on the Scope and Nature of Child Sexual Abuse, The Future of Children, Vol. 4, No. 2, at 32 (Summer/Fall 1994); David Finkelhor, The Prevention of Childhood Sexual Abuse, The Future of Children, Vol. 19, No. 2, at 170-71 (Fall 2009). See also 18 U.S.C. § 2243 (making “a sexual act” an element of the federal crime of “sexual abuse of a minor or ward”); 28 C.F.R. § 115.6 (defining certain conduct as “sexual abuse” in the context of the Prison Rape Elimination Act); United States v. Baza-Martinez, 464 F.3d 1010, 1012 (9th Cir.2006), rehearing denied, 481 F.3d 690 (9th Cir.2007) (holding that North Carolina’s indecent liberties statute is not “sexual abuse of a minor”).
Third, Diaz-Ibarrd’s description of sexual abuse of a minor is untethered even from the criminal law of several states. For example, Diaz-Ibarra isolated two critical features that were elements of the Georgia statute under which the prior conviction arose: “[1] a defendant who is in a child’s presence must commit some immoral or indecent act with the intent to gratify his own sexual desires or the desires of the child .... [,] and [2] the child must be at least minimally aware of the defendant’s presence.” 522 F.3d at 353 (emphasis added). These features were also elements of the Florida statute in the Eleventh Circuit case on which Diaz-Ibarra based its description of “sexual abuse of a minor.” United States v. Padilla-Reyes, 247 F.3d 1158, 1162 n. 4 (11th Cir.2001) (noting that the Florida statute targeted “[l]ewd, lascivious, or indecent assault or act[s] upon or in presence of child”) (quoting Fla. Stat. § 800.04) (emphasis added).[6]
But unlike the statutes at issue in Diaz-Ibarra and Padillar-Reyes, “presence” is not an element of our definition of sexual abuse of a minor. (Nor is it an element of the North Carolina indecent liberties statute, a point the state appellate court has recognized. McClees, 424 S.E.2d at 689.) In other words, Diaz-Ibarra eschewed what may be a common feature of state child sexual abuse statutes, presence and/or physical proximity, in favor of something more nebulous, a perplexing choice given that the Supreme Court has said that our task in formulating these generic definitions is to contemplate “the generic sense in which the term is now used in the criminal codes of most States.” Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (construing “burglary” in the Armed Career Criminal Act). This is precisely what we did in United States v. Rangel-Castaneda, 709 F.3d 373 (4th Cir.2013) (holding that the Tennessee statutory rape statute is broader than generic statutory rape). We should revisit our concept of *959 “sexual abuse of a minor” and follow the approach we took in that case.
Let’s be honest. Because child sexual abuse involves a particularly vulnerable population, emotions tend to gallop, and understandably so; indeed, “sexual abuse of a minor” appears to have been included in the reentry Guideline not so much over a fear of violence but because all decent people experience boundless antipathy and abject opprobrium at the very thought of such perpetrators. But our task is not to punish sex offenders;[7] rather, it is to give meaning to words chosen by legislators. How we give meaning to words must be driven by their common understanding and the context in which they are found. Violence, abuse, injury, and the perpetrator’s presence are not just relevant to assessing, as a factual matter, whether certain conduct constitutes sexual abuse— they are also critical limiting principles in defining what constitutes “sexual abuse of a minor” for purposes of federal sentencing law. Although it may be that not all of these factors should ultimately be built into a definition of “sexual abuse of a minor,” they at least are all starting points that Diaz-Ibarra rejected in favor of breathtaking limitlessness.
There is, however, an even broader point: One who surveys our recent, ongoing efforts to make sense of the reentry Guideline will discover substantial dissonance, rapidly approaching incoherence. Compare United States v. Montes-Flores, 736 F.3d 357 (4th Cir.2013) (conviction under South Carolina law for assault and battery of a high and aggravated nature not a crime of violence), and United States v. Cabrera-Umanzor, 728 F.3d 347 (4th Cir.2013) (conviction under Maryland’s child abuse statute not a crime of violence), and United States v. Torres-Miguel, 701 F.3d 165 (4th Cir.2012) (conviction under California law for willfully threatening to commit a crime that would result in death or great bodily injury not a crime of violence), and Rangel-Castaneda, 709 F.3d at 373 (conviction under Tennessee law for statutory rape not a crime of violence), and United States v. Gomez, 690 F.3d 194 (4th Cir.2012) (conviction under Maryland’s child abuse statute not a crime of violence), with United States v. Aparicio-Soria, 721 F.3d 317 (4th Cir.2013) (conviction under Maryland resisting arrest statute a crime of violence), rehearing en banc granted, and United States v. Medina-Campo, 714 F.3d 232 (4th Cir.2013) (conviction under Oregon unlawful delivery of controlled substance statute a predicate “drug trafficking offense”), and United States v. Bonilla, 687 F.3d 188 (4th Cir. 2012) (conviction under Texas law for burglary of a habitation a crime of violence). We would do well to begin the clean-up process by revisiting Diaz-Ibarra and thereby bring a measure of coherence to the meaning of “sexual abuse of a minor” at the very least.[8]
*960 [M]yriad offenses could fall under the broad rubric of- “sexual abuse of a minor.” The states, of course, are free to criminalize a broad range of “sexual” conduct so long as they stay within federal constitutional bounds. But in deciding the propriety of a federal sentencing enhancement— a uniquely federal question — we must seek clarity and uniform treatment of similarly-situated defendants. The problem presented here is that, because of the vast array of conduct that could be “sexual abuse of a minor,” “one size does not fit all.” Although a sixteen-level enhancement is too low for some of the more vile eases we see in this area, it is too high for others.

. The Government stated at oral argument that these cases are extreme outliers and that our task is to envision the paradigm case of taking an indecent liberty with a minor. But the North Carolina courts’ construction of the statute and its legislature's manifest intent suggest that these cases are actually intended to be the heart of the conduct criminalized. Indeed, the essence of this statute is its breadth: "[T]he variety of acts included under the statute demonstrate that the scope of the statute's protection is to encompass more types of deviant behavior and provide children with broader protection than that available under statutes proscribing other sexual acts.” State v. McClary, 198 N.C.App. 169, 679 S.E.2d 414, 418 (2009) (citations and quotations omitted) (emphasis added). We should take the North Carolina courts at their word. In short, not only does the indecent liberties statute capture far more conduct than does even a broadly acceptable definition of "sexual abuse of a minor,” it is intentionally designed to do just that. That is the gravamen of the opinions by Judge King and myself in United States v. Vann, 660 F.3d 771 (4th Cir.2011).

. Cf. United States v. Thornton, 554 F.3d 443, 449 (4th Cir.2009) ("Although nonforcible adult-minor sexual activity can present grave physical risks to minors, and although states are entitled to criminalize nonforcible adult-minor sexual activity to protect minor victims from these risks, such risks are not sufficiently ‘similar, in kind as well as in degree of risk posed to the examples’ of burglary, arson, extortion, and crimes involving explosives.”) (citation omitted).

. I am not the first to recognize that these cases do not involve crimes of violence: Judge King silently made this point in his concurrence in Vann, 660 F.3d at 785-86 (King, J., concurring), an opinion in which all three judges on today's panel joined.

. The "force clause” is found in the Commentary to the Guideline:
"Crime of violence” means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.
U.S.S.G. § 2L1.2 cmt. 3 (emphasis added).

. The "force clause” of the Armed Career Criminal Act reads as follows:
[T]he term “violent felony” means any crime punishable by imprisonment for a term exceeding one year ,... that ... (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another!.] 18- U.S.C. § 924(e)(2)(B) (emphasis added).

. These features of sexual abuse of a minor are also elements, either explicitly or implicitly, of every comparable state statute in the Fourth Circuit. Md.Code, Crim. Law § 3-602(a)(4) (defining “sexual abuse” for purposes of sexual abuse of a minor as “an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not”); S.C.Code § 16-3-655 (providing that third-degree criminal sexual conduct with a minor requires at a minimum an "attempt to commit a lewd or lascivious act upon or with the body, or its parts, of a child”); Va.Code § 18.2-67.4:2 and 18.2-67.10(6) (defining "sexual abuse” as an "act committed with the intent to sexually molest, arouse, or gratify any person, where” touching or causing touching is involved); W. Va. Code § 61-8D-5 (criminalizing any "attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child”).

. As Judge Haynes has cogently observed:
We must also remember that federal sentencing is not an opportunity to resentence the defendant for a state crime. The state has already meted out a punishment it thought appropriate. Here, the Texas court sentenced Rodriguez to two years of imprisonment. The offense of conviction in federal court was illegal reentry, not a sexual crime.
United States v. Rodriguez, 711 F.3d 541, 569 n. 2 (5th Cir.2013) (en banc) (Haynes, J., concurring).

. Judge Haynes again provides astute observations that are relevant in this Circuit:
I write separately because this case highlights the need for the Sentencing Commission to define "sexual abuse of a minor” — a crime with few common-law analogs. Against the backdrop of a patchwork of state laws on the subject, this guideline is singularly unhelpful.... We thus are left to puzzle over nebulous terms that can mean different things in different contexts, a result that frustrates our ability to provide even-handed *960 treatment to similarly-situated, but geographically-diverse, defendants.
Rodriguez, 711 F.3d at 568-69 (Haynes, J., concurring) (citations and footnotes omitted).