**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4556**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

TIMOTHY SCOTT HARDIN,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Kenneth D. Bell, District Judge. (5:18-cr-00025-KDB-DCK-1)

Argued: March 10, 2021                            Decided: May 25, 2021

Before WYNN, THACKER, and QUATTLEBAUM, Circuit Judges.

Affirmed in part, vacated in part and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Thacker joined. Judge Wynn wrote a dissenting opinion.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

Appellant Timothy Hardin pled guilty to a single count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). On appeal, he asks us to vacate his sentence on two grounds. First, Hardin contends his prior conviction for Tennessee statutory rape does not categorically qualify under the federal child pornography statute for the recidivist enhancement as "relating to . . . abusive sexual conduct involving a minor or ward . . . ." 18 U.S.C. § 2252A(b)(1).[1] As such, he argues the district court incorrectly applied the recidivist enhancement to his sentence. We disagree. Tennessee statutory rape categorically qualifies, and the district court's sentence properly applied the statutory recidivist enhancement.

Second, Hardin asserts that we should vacate the district court's imposition of a life term of supervised release and associated conditions because the court failed to explain its reasoning. On this argument, we agree. As such, we affirm in part, vacate in part and remand for further proceedings.

## I.

The statutory penalty range for a § 2252A(a)(2) violation is ordinarily a minimum term of five years and a maximum term of twenty years. 18 U.S.C. § 2252A(b)(1). If, however, a defendant has a prior conviction "under the laws of any State relating to

---

[1] For clarity, we will hereinafter refer to this phrase of the enhancement statute as "relating to abusive sexual conduct involving a minor." We acknowledge, however, that this simplification omits some text.

aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . ," the penalty increases to a minimum of fifteen years and a maximum of forty years. *Id*. Central to this appeal is the fact that Hardin had a prior conviction for statutory rape in Tennessee from decades earlier.

The probation office's Presentence Investigation Report ("PSR") applied the enhanced penalty based on Hardin's prior statutory rape conviction and recommended a supervised release term of five years to life. Moreover, in addition to the mandatory and standard conditions of supervision, the PSR identified that the Standard Sex Offender Conditions adopted by the Western District of North Carolina may apply.

At his sentencing hearing, Hardin first objected to application of the statutory enhancement, arguing the Tennessee statute swept more broadly than the generic federal definition, and as such, captured conduct not "relat[ed] to abusive sexual conduct involving a minor." *See* 18 U.S.C. § 2252A(b)(1). The district court disagreed, relying on *United States v. Colson*, 683 F.3d 507 (4th Cir. 2012), to find that Tennessee statutory rape qualified as a predicate offense because it related to "the perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." J.A. 73–74 (internal quotation marks omitted). According to the district court, while the guidelines' range without the enhancement would be 135 to 168 months, the statutory enhancement resulted in an increase to the statutory mandatory minimum to 180 months. Accordingly, the district court imposed a sentence of 180 months of incarceration.

3

Additionally, the district court imposed the maximum supervised release term authorized under the statute—a lifetime term—and a variety of conditions, including "standard sex offender conditions of supervised release that have been adopted by the Court in this district." J.A. 99–100. Hardin objected to both the length of the term and several conditions. The district court overruled Hardin's objection to the length of the supervised release term, indicating it could later terminate supervised release if appropriate. In response to Hardin's objections to various standard sex offender conditions, first, regarding conditions limiting contact with children and prohibiting loitering or being in places where children may be present, the district court acknowledged Hardin's arguments. But it elected to leave those conditions in place, indicating it could address any modifications at Hardin's release. As to the conditions prohibiting Hardin's use of internet-enabled devices without permission or knowledge of the probation department, the district court acknowledged Hardin's objection. But it overruled it given this was not a per se ban. Finally, as to the employment condition prohibiting Hardin from working in a position or volunteering in any activity that involves direct or indirect contact with children, the district court acknowledged Hardin's argument. But again, the district court elected to leave the condition in place without explanation.

After the district court entered judgment, Hardin timely appealed. We have jurisdiction to hear his appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

4

II.

We first evaluate whether Hardin's conviction for Tennessee statutory rape properly qualifies under the federal child pornography statute's recidivist enhancement as "relating to abusive sexual conduct involving a minor." 18 U.S.C. § 2252A(b)(1). This requires us to look at Tennessee statutory rape through the lens of the categorical approach. *See Colson*, 683 F.3d at 509–10. Under that approach, we look "'only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies' as an offense 'relating to' the predicate offenses listed in 18 U.S.C. § 2252A(b)(1)." *Id.* at 510 (quoting *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008)).

To determine the most innocent conduct under the Tennessee statutory rape statute, we review its text:

> (a) Statutory rape is sexual penetration of a victim by the defendant or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim.

Tenn. Code Ann. § 39-13-506 (1993).[2] The Supreme Court has told us that the most innocent conduct under a statutory rape statute looks not to conduct, but to age of the individuals. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (defining the

---

[2] Tenn. Code Ann. § 39-13-501(7) defines "sexual penetration" to include "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required."

5

most innocent conduct under the categorical approach of a California law which criminalized "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator and define[d] a minor as someone under age 18," as "consensual sexual intercourse between a victim who is almost 18 and a perpetrator who just turned 21" (internal quotation marks omitted)). Here, under the Tennessee statute, the most innocent conduct covered would be consensual sex between a seventeen-year-old victim and a twenty-one-year-old defendant.

With that information in hand, we examine whether this conduct qualifies for the recidivist enhancement under 18 U.S.C. § 2252A(b)(1). The recidivist enhancement provides that:

> if such person [who is in violation of Section 2252A(a)(2)] has a prior conviction . . . under the laws of any State *relating to* aggravated sexual abuse, sexual abuse, or *abusive sexual conduct involving a minor* or ward . . . such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

18 U.S.C. § 2252A(b)(1) (emphasis added). Thus, if consensual sex between a seventeen-year-old victim and a twenty-one-year-old defendant "relat[es] to abusive sexual conduct involving a minor," such conduct qualifies under the enhancement, and Hardin's sentence should be affirmed. On the other hand, if such conduct does not qualify under the enhancement, the sentence must be vacated.[3]

---

[3] We review legal questions, including whether a state conviction qualifies as a predicate offense under a statutory enhancement, de novo. *United States v. Spence*, 661 F.3d 194, 197 (4th Cir. 2011).

To answer this question, we must interpret § 2252A(b)(1)'s phrase "relating to abusive sexual conduct involving a minor." Fortunately, to do so, we need not create or interpret anything new. Rather, we need only substitute words and phrases contained in § 2252A(b)(1) with the proper meanings provided by both Congress and our binding precedent. We analyze this phrase in two composite parts—"abusive sexual conduct involving a minor" and "relating to."

We begin with the phrase "abusive sexual conduct involving a minor." Congress expressly defined "minor" for this enhancement statute. The defining statute states, "[f]or the purposes of [Chapter 110. Sexual Exploitation and Other Abuse of Children], . . . 'minor' means any person under the age of eighteen years." 18 U.S.C. § 2256(1). Thus, after substituting the term "minor" with the statutory definition, the enhancement statute reads that a previous state conviction, like Tennessee statutory rape, qualifies under § 2252A(b)(1) if it relates to abusive sexual conduct involving a person under the age of eighteen.

Unpacking our phrase further, we turn to "abusive sexual conduct." Our decision in *Colson* squarely interprets that language. There, Colson had a prior conviction under Virginia law for "Production, Publication, Sale, or Possession, etc. of Obscene Items Involving Children."[4] *Colson*, 683 F.3d at 509 (internal quotation marks omitted). We were

_____

[4] At the time of Colson's state-law conviction, Virginia law provided, "[a] person shall be guilty of a Class 5 felony who . . . [p]roduces or makes or attempts to prepare or prepares to produce or make sexually explicit visual material which utilizes or has as a subject a person less than 18 years of age." *Colson*, 683 F.3d at 510 (quoting Va. Code Ann. § 18.2–374.1(B)(2) (1984)).

asked whether his prior state conviction qualified for the § 2252A(b)(1) enhancement as "relating to abusive sexual conduct involving a minor." *See id*. at 510 (quoting 18 U.S.C. § 2252A(b)(1)). In response, we defined the phrase "abusive sexual conduct involving a minor" in § 2252A(b)(1) to mean a "perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification."[5] *Id*. at 510 (quoting *Diaz-Ibarra*, 522 F.3d at 352). Additionally, we gave no consideration to the impact of consent on our understanding of either the term "minor" or what conduct amounted to "misuse or maltreatment." With that additional clarification, § 2252A(b)(1) reads that a previous state conviction, like Tennessee statutory rape, qualifies if it relates to physical or nonphysical misuse or maltreatment of a person under the age of eighteen for a purpose associated with sexual gratification.[6]

We now turn to our second phrase, "relating to." For that, *Colson* is again instructive. There, we explained that § 2252A(b)(1), viewed through the lens of the

---

[5] While we did not address more specifically the meaning of "involving a minor," our decision appears to support our importation of "minor" from 18 U.S.C. § 2256(1). *See Colson*, 683 F.3d at 511 ("[W]e have little difficulty concluding that Colson's 1984 conviction for '[p]roduc[ing] or mak[ing] or attempt[ing] to prepare . . . to produce or make sexually explicit visual material which utilizes or has as a subject a person less than 18 years of age' under Virginia law 'stands in some relation to,' 'pertains to,' 'concerns,' or has a 'connection' with the sexual abuse of children, as well as the production of child pornography.").

[6] Up to this point, our good colleague in dissent agrees. Dissenting Op. at 23. On application, however, our paths diverge. While we seek to measure the Tennessee statute against our agreed-upon definition, the dissent seeks to revisit the term "abusive" and redefine it to mean something different than that upon which we already agreed. But our role here is limited. It does not include giving our opinions on the merits and policy of the recidivist enhancement.

categorical approach, "does not require that the predicate conviction *amount to* 'sexual abuse' or 'abusive sexual conduct involving a minor.' Rather, a conviction qualifies as a predicate conviction merely if it *relates to* sexual abuse or abusive sexual conduct involving a minor, or indeed, even to child pornography." *Id*. at 511; *see also United States v. Spence*, 661 F.3d 194, 200 (4th Cir. 2011) (explaining that, in light of the "relating to" language, "the nature of the crime . . . does not need to satisfy a narrow definition of sexual abuse in order to qualify as a predicate offense" under § 2252A(b)(2)).

"Relating to" calls for a different application of the categorical approach. In the typical application, we look to see if the state conviction matches the federal counterpart. But because of the use of "relating to," the match need not be perfect. This is because "Congress chose the expansive term 'relating to' in § 2252A(b)(1) to ensure that individuals with a prior conviction bearing some relation to sexual abuse, abusive conduct involving a minor, or child pornography receive enhanced minimum or maximum sentences." *Id*. at 511–12. A different way of saying this is that the inclusion of "relating to" means we apply the categorical approach "and then some."[7] But even so, we still need

---

[7] Although we use "and then some" colloquially, the phrase is consistent with how our sister circuits have interpreted the same language. *See United States v. Jaycox*, 962 F.3d 1066, 1069 (9th Cir. 2020) ("[W]hen a federal statute includes the phrase 'relating to,' our inquiry does not end even if a state offense is not a categorical match. The Supreme Court has held that this 'key phrase' has a broadening effect."); *United States v. Mateen*, 806 F.3d 857, 860 (6th Cir. 2015) ("[A] prior state conviction requires only that the defendant have been convicted of a state offense 'relating to . . . sexual abuse.' Other circuits have broadly interpreted the phrase 'relating to' as triggering sentence enhancement for any state offense that stands in some relation, bears upon, or is associated with that generic offense." (internal citation and quotation marks omitted)); *United States v. Barker*, 723 F.3d 315, 322–23 (2d Cir. 2013) ("In the context of sentencing

to understand the parameters of "and then some." *Colson* provides those parameters. In defining "relating to," *Colson* held that the conduct only needs "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" abusive sexual conduct involving a minor. *Id.* at 511 (internal quotation marks omitted).[8]

Putting these pieces together, we now have our inquiry: Does consensual sex between a seventeen-year-old victim and a twenty-one-year-old defendant stand in some relation to a perpetrator's physical or nonphysical misuse or maltreatment of a person under the age of eighteen for a purpose associated with sexual gratification?

Plainly, it does. First, statutory rape, even by its most innocent conduct, involves a person under the age of eighteen. Second, the most innocent conduct here stands in some relation to physical misuse or maltreatment for a purpose associated with sexual

---

enhancements, 'relating to' has been broadly interpreted . . . to apply not simply to state offenses that are equivalent to sexual abuse, but rather to any state offense that stands in some relation [to], bears upon, or is associated with [the] generic offense." (alteration in original and internal quotation marks omitted)); *United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009) ("We must assume that Congress chose the words 'relating to' for a purpose. The phrase 'relating to' carries a broad ordinary meaning, i.e., to stand in some relation to; to have bearing or concern to pertain; refer; to bring into association or connection with." (internal citations and quotation marks omitted)).

[8] Against this understanding of "relating to abusive sexual conduct involving a minor," we concluded in *Colson* that a prior conviction of production of child pornography categorically related to a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification. *See Colson*, 683 F.3d at 510, 512 (internal quotation marks omitted). The production of child pornography was categorically connected with using a person under the age of eighteen for sexual gratification. *See id.* at 512.

gratification.[9] The fact that a seventeen-year-old victim and a twenty-one-year-old defendant may be engaging in a *consensual* activity is of no moment for purposes of the Tennessee statute. Consent, by definition, is no defense to statutory rape. It is illogical, therefore, for consent to now, in the context of the enhancement, render statutory rape not related to misuse or maltreatment of someone under the age of eighteen. In fact, such a result seems inconsistent with the entire premise behind statutory rape—that regardless of circumstances, it is wrong to have sex with someone, a child, under a proscribed age because they are legally incapable of consent.

To this point, *Colson* gave no indication consent would mean that the production of child pornography did not relate to misuse or maltreatment for purposes of the enhancement. In other words, a seventeen-year-old victim consenting to have a nude photograph taken would still relate to misuse or maltreatment of a person under eighteen. Our use of the word "misuse," in fact, suggests such conduct need not be based on a colloquial understanding of "abusive." Rather, "misuse" merely means "incorrect or careless use" or "wrong or improper use." *Misuse*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 2002). And pursuant to the Tennessee statute, sex with a seventeen-

---

[9] It cannot be contested that Tennessee statutory rape is "for a purpose associated with sexual gratification." In fact, this is even more so than the production of child pornography at issue in *Colson* because here, sexual gratification is necessarily bound up in the defendant and involves sexual penetration of a minor. Hardin does not argue, nor could he, that Tennessee statutory rape is committed for some purpose other than one associated with sexual gratification.

year-old victim, even if consensual, falls within either definition of "misuse." For all these reasons, Hardin's prior conviction qualifies under the enhancement.

Hardin, however, claims this interpretation ignores the word "abusive," such that it renders the term meaningless. For support, Hardin directs us to *Esquivel-Quintana v. Sessions*. There, the Supreme Court considered whether statutory rape amounted to "sexual abuse of a minor," thus making Esquivel-Quintana deportable for a prior conviction of an aggravated felony under the Immigration and Nationality Act ("INA"). *Esquivel-Quintana*, 137 S. Ct. at 1567. Critically, however, unlike § 2252A(b)(1), the INA contained no statutory definition of the term "minor" to guide the Supreme Court's analysis. *Id.* at 1569. In the absence of a statutory definition of "minor," the Supreme Court had to ascertain the meaning of "sexual abuse of a minor" utilizing principles of statutory interpretation. *See id.* Based on the language of the statute and the term "minor" as ordinarily understood and defined,[10] the Court held "the general consensus from state criminal codes points to the same generic definition as dictionaries and federal law: Where sexual intercourse is abusive solely because of the ages of participants, the victim must be younger than 16." *Id.* at 1572.

---

[10] "[T]o qualify as sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim." *Esquivel-Quintana*, 137 S. Ct. at 1569. Statutory rape laws are an example because they prohibit "sexual intercourse with a younger person under a specified age, known as 'the age of consent.'" *Id.* The generic age of consent is usually sixteen. *See id.* And "[a] closely related federal statute, 18 U.S.C. § 2243, provides further evidence that the generic federal definition of sexual abuse of a minor incorporates an age of consent of 16, at least in the context of statutory rape offenses predicated solely on the age of the participants." *Id.* at 1570.

*Esquivel-Quintana*, however, does not control our analysis of the § 2252A(b)(1) enhancement. *Esquivel-Quintana* was interpreting an entirely different statute—the INA, which does not define "minor." We see no reason to substitute the definition Congress provided for the term "minor" in § 2252A(b)(1) with a definition reached in interpreting an entirely different statute which did not define that term.

Further, in addition to not defining "minor" as a person under eighteen, the INA differs from § 2252A(b)(1) in another important way. The INA makes an alien deportable for conduct that, in fact, amounts to "sexual abuse of a minor." *See* 8 U.S.C. § 1101(a)(43)(A). Section 2252A(b)(1), in contrast, applies to conduct that *relates to* abusive sexual conduct involving a minor. As described above, by using "relating to," Congress cast a wider net in § 2252A(b)(1) than it did in the INA.

The other authority on which Hardin relies to argue that "abusive" means a victim younger than sixteen is not applicable for the same reasons as *Esquivel-Quintana*. First, he directs us to the federal criminal statute defining conduct amounting to "sexual abuse of a minor" at 18 U.S.C. § 2243. There, Congress did provide a definition: "sexual abuse of a minor" amounts to "knowingly engag[ing] in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." 18 U.S.C. § 2243(a). But that statute hardly supports his position. To the contrary, § 2243(a) indicates Congress knows how to limit sexual abuse of a minor to victims under sixteen. Despite that, it defined "minor" in § 2256(1) as persons under eighteen. The fact that Congress elected to define "minor" differently in statutes, if anything, suggests that Congress knowingly cast a wider net for

13

the recidivist enhancement than it did for the statute codifying a direct offense. It is not our job to narrow Congress's net or compel definitional consistency across unrelated legislation. Additionally, like the INA, 18 U.S.C. § 2243 describes conduct that amounts to sexual abuse of a minor, not conduct that *relates to* sexual abuse of a minor. Thus, its reach is narrower than § 2252A(b)(1).

Finally, Hardin claims our decision in *United States v. Rangel-Castaneda*, 709 F.3d 373 (4th Cir. 2013), supports his argument that "'sexual abuse of a minor' does not cover consensual sexual 'actions that involve only individuals who are above age sixteen.'" Appellant's Br. at 14 (quoting *Rangel-Castaneda*, 709 F.3d at 381). There, we were first asked whether a defendant's conviction for Tennessee statutory rape categorically amounted to a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and, more specifically, as "sexual abuse of a minor" under Application Note 1(B)(iii) of that guideline provision. *Rangel-Castaneda*, 709 F.3d at 380. But again, that crime of violence enhancement neither defined "minor" nor contained "relating to" language. Thus, we had to use principles of statutory interpretation to define "sexual abuse of a minor." *See id.* at 380–81. Based on principles similar to those in *Esquivel-Quintana*, we found "sexual abuse of a minor" required statutory rape of a victim under the age of sixteen. *See id*. at 380–81.

In *Rangel-Castaneda*, we also considered whether the defendant's same conviction alternatively qualified under the aggravated felony enhancement at U.S.S.G. § 2L1.2(b)(1)(C) and cmt.n.3(A). *Id*. at 381. "Sexual abuse of a minor" from 8 U.S.C. § 1101(a)(43) triggers the enhancement. *Id*. Like the crime-of-violence enhancement, however, neither §1101(a)(43) nor the aggravated felony enhancement define "minor."

14

Further, neither contain "relating to" language. Thus, although we determined Tennessee statutory rape was categorically overbroad and did not qualify for the aggravated felony enhancement, *Rangel-Castaneda* does not help Hardin because the federal statutes at issue neither defined minor as under eighteen nor covered conduct relating to abusive sexual conduct involving a minor.

In short, none of the authority to which Hardin, and now the dissent, direct our attention defines "minor" as our statute does, a person under the age of eighteen, or captures conduct "relating to" abusive sexual conduct involving a minor. Rather, the authority either does not define "minor" or defines "minor" as someone under sixteen and captures only conduct that "amounts to" abusive sexual conduct involving a minor. Given § 2252A(b)(1), § 2256(1) and our binding precedent directly answer our inquiry, we decline Hardin's invitation to look elsewhere to interpret relating to abusive sexual conduct involving a minor. Based on § 2256(1)'s definition of a minor as a person under eighteen, consensual sex involving a seventeen-year-old victim and a twenty-one-year-old defendant "relat[es] to abusive sexual conduct involving a minor." Therefore, the most innocent conduct criminalized under the Tennessee statutory rape statute qualifies under § 2252A(b)(1)'s enhancement, and we affirm the district court's application of the enhancement to Hardin's sentence.

15

We next turn to Hardin's argument that the district court failed to adequately explain its imposition of a life term of supervised release and associated conditions. For the reasons set forth below, we hold the district court's explanations are insufficient.[11]

First, as to length of the supervised release term, "[w]hen a defendant offers non-frivolous reasons for imposing a sentence outside of the Guidelines range, 'a district judge should address the party's arguments and explain why he has rejected those arguments.'" *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)). But a court need not "address every argument a defendant makes," focusing instead on the whole of defendant's argument. *Id*. "Instead, '[t]he adequacy of the sentencing court's explanation depends on the complexity of each case . . . [and] [t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances.'" *Id*. (alterations in original) (quoting *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017)). This requires, at bottom, that "the sentencing court has said 'enough to satisfy' us that the court 'has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority.'" *Id*. (alteration in original) (quoting *Blue*, 877 F.3d at 518). "[I]n a routine case, where the district court imposes a within-Guidelines sentence, the explanation need not be elaborate or lengthy." *Id*. at 174–75 (internal quotation marks omitted).

---

[11] We review a district court's explanation of the sentence it imposed for abuse of discretion. *United States v. Lynn*, 592 F.3d 572, 581 (4th Cir. 2010).

Here, the district court imposed a life term of supervised release. Under the statute, the authorized term of supervised relief for an offense involving a minor is not less than five years to life, 18 U.S.C. § 3583(k), and a life term of supervised release was expressly recommended. Hardin objected, his essential argument being that "he is among the least culpable of child pornography offenders and presents the lowest risk of committing a future offense." Appellant's Reply Br. at 13 (internal quotation marks omitted); J.A. 113–15. And while we do not doubt that the district court heard and understood Hardin on his objection,[12] its explanation was insufficient. The district court responded specifically to Hardin's objection to the life term of supervised release as follows: "I think the best way to handle that, the way we will handle it in this case is, if appropriate at any time while he is under supervised release, that they can come back to the Court, either party, and ask that the supervised release be terminated or the conditions be altered. So we will leave it like that." J.A. 115. While the district court's explanation for a within-Guidelines sentence need not be lengthy, *see Arbaugh*, 951. F.3d at 174–75, simply stating that Hardin's term may be modified at a later date is insufficient.

As to the district court's explanations for the conditions imposed, *United States v. McMiller*, 954 F.3d 670 (4th Cir. 2020), controls. In *McMiller*, we considered the same

---

[12] The district court stated at the outset of the hearing, "I know that there are some objections to the presentence report. I have studied your very lengthy explanations of those objections so you can assume that I am familiar with your arguments, but I would like to hear from you on them." J.A. 61. The record reveals that the district court specifically heard and considered Hardin's overarching argument—that he was lower risk and thus, merited a shorter term than the sentencing recommendation. J.A. 113–15.

standard sex offender conditions at issue here, with the district court imposing "[w]ithout additional explanation, . . . the standard sex offender conditions of supervised release that have been adopted by the Court in the Western District of North Carolina." 954 F.3d at 673 (internal quotation marks omitted). On appeal, this Court found the imposition of two of the same conditions, without individualized explanation, plain error. *Id.* at 675–76. The Court emphasized that the district court had a duty "to explain to [defendant] 'why he faces special conditions that will forever modify the course of his life.'" *Id*. at 676 (quoting *United States v. Ross*, 912 F.3d 740, 746 (4th Cir. 2019)). This duty cannot be satisfied by reference to a standing order. *Id*.[13]

Here, the district court first appeared to do precisely what the district court did in *McMiller*—order compliance with standard sex offender conditions by reference to a standing order. *Compare McMiller*, 954 F.3d at 676 (The court "summarily order[ed] McMiller to comply with the 'standard sex offender conditions of supervised release that have been adopted by the Court in the Western District of North Carolina.'"), *with* J.A. 100 ("While on supervised release the defendant . . . shall comply with the standard conditions of supervised release, and the standard sex offender conditions of supervised release that have been adopted by the Court in this district . . . .").

Turning next to what the district court said above and beyond its mere reference to the standing order, we hold these individualized explanations also fail under *McMiller*.

---

[13] In fairness to the district court, our *McMiller* decision had not been issued at the time of Hardin's sentencing. Therefore, it did not have the benefit of its guidance.

18

Even under our deferential standard of review, the district court's explanations fail to provide adequate explanation sufficient for meaningful appellate review. Most contain, at most one or two sentences that, rather than explain the condition, indicate a determination to keep the condition in place. While the district court may have wide discretion to impose conditions such as these, the district court has a duty to explain its imposition of life-altering conditions of supervised release. *McMiller*, 954 F.3d at 676.

*McMiller* also instructs us as to our disposition of Hardin's case in light of the district court's insufficient explanations. There, facing facts very similar to those presented here, we vacated the specific conditions imposed and remanded for further proceedings on those issues. *Id*. at 677 ("[W]e vacate special conditions 9 and 13 as procedurally unreasonable and remand to the district court for further explanation. We affirm the balance of McMiller's sentence."); *see also Arbaugh*, 951 F.3d at 179 ("We therefore vacate Arbaugh's sentence only as to the challenged special conditions of release. We remand for resentencing so that the district court can decide whether to impose those conditions and, if so, to provide an individualized assessment of its reasons . . . ."). Following that approach, we vacate the district court's imposition of a life term of supervised release and special conditions 7, 8, 9, 13 and 15 and remand to the district court for further proceedings.[14]

---

[14] In *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021), and *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), we vacated sentences in their entirety when the district court failed to pronounce discretionary conditions orally at sentencing hearings but later imposed them in written judgments. In *McMiller* and *Arbaugh*, as here, the district court pronounced these conditions, but failed to explain them. In response to that error, we

19

IV.

In conclusion, we affirm the district court's application of the recidivist enhancement, holding that Tennessee statutory rape categorically qualifies as "relating to abusive sexual conduct involving a minor." We do, however, vacate the portion of the district court's sentence imposing a life term of supervised release and related sex-offender conditions and remand for further proceedings.

*AFFIRMED IN PART, VACATED IN PART AND REMANDED*

---

did not vacate the sentence in its entirety but only the portions that were inadequately explained.

WYNN, Circuit Judge, dissenting:[15]

In 1993, Tennessee law criminalized consensual sexual activities between individuals who were seventeen years old and those who were twenty-one years old. The issue on appeal is whether Timothy Hardin's prior conviction under that law qualifies as one "relating to . . . abusive sexual conduct involving a minor" under the federal child-pornography statute's recidivist enhancement. 18 U.S.C. § 2252A(b)(1). While I agree with my colleagues that the Tennessee law is a categorical match for "sexual conduct involving a minor," I disagree that it categorically "relat[es] to" "abusive" sexual conduct involving a minor.

In my view, the majority's expansive interpretation of § 2252A misreads binding case law, creates a circuit split, misapplies the categorical approach, and adopts a definition of the phrase "relating to abusive sexual conduct involving a minor" that triples mandatory-minimum sentences based on prior convictions for conduct that is not criminal in forty-two states. I respectfully dissent.

## I.

For over thirty years, federal courts have evaluated the applicability of sentencing enhancements based on predicate convictions using the categorical approach—that is, by determining whether the most innocent conduct criminalized under the predicate state

---

[15]Because I would vacate Hardin's sentence on the basis that the district court should not have applied the § 2252A enhancement, I would not reach his objections to the length and terms of his supervised release. Accordingly, my dissent is limited to the § 2252A enhancement issue.

offense would also be unlawful under the corresponding generic federal offense. If not, the state offense is broader than the generic federal definition of the offense, and the state conviction cannot serve as a predicate for federal sentencing purposes. *See Taylor v. United States*, 495 U.S. 575, 599–602 (1990); *United States v. Johnson*, 945 F.3d 174, 179 (4th Cir. 2019) ("We look to the elements of the offense to resolve 'whether the conduct criminalized by the statute, including the most innocent conduct, qualifies' as a predicate." (quoting *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008))).

One of the Supreme Court's reasons for adopting the categorical approach was that, absent clear congressional direction, "the meaning of the federal statute should not be dependent on state law." *Taylor*, 495 U.S. at 592 (quoting *United States v. Turley*, 352 U.S. 407, 411 (1957)). In other words, a situation in which "conduct that is perfectly legal for some people . . . subject[s] many others in neighboring states to years upon years in federal prison" would be precisely "the sort of unjust and 'odd result[ ]' that *Taylor* intended to preclude" when it adopted the categorical approach. *United States v. Rangel-Castaneda*, 709 F.3d 373, 377 (4th Cir. 2013) (quoting *Taylor*, 495 U.S. at 591).

As the majority notes, the most innocent conduct criminalized by the Tennessee law under which Hardin was convicted is consensual sexual activity between a seventeen-year-old and a twenty-one-year-old.[16] Majority Op. at 6; *see* Tenn. Code Ann. § 39-13-506(a) (1993). This conduct does not categorically "relat[e] to . . . abusive sexual conduct

---

[16] As the majority notes, the Tennessee statute covers a wider range of sexual activities than just intercourse. *See* Tenn. Code Ann. §§ 39-13-501(7), -506(a) (1993).

involving a minor," and thus cannot support Hardin's enhanced sentence. 18 U.S.C. § 2252A(b)(1).

II.

Like the majority, I begin with the phrase "abusive sexual conduct involving a minor." Congress defined "minor" as used in § 2252A to include all persons under the age of eighteen. 18 U.S.C. § 2256(1). And we have previously defined "abusive sexual conduct involving a minor" as the "physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification." *United States v. Colson*, 683 F.3d 507, 510 (4th Cir. 2012) (quoting *Diaz-Ibarra*, 522 F.3d at 352).[17] Combining these definitions, the majority correctly reads "abusive sexual conduct involving a minor" in § 2252A(b)(1) to mean the "physical or nonphysical misuse or maltreatment of a person under the age of eighteen for a purpose associated with sexual gratification." Majority Op. at 8. So far, so good.

Further, there is no dispute that the Tennessee statute reaches only conduct that is "sexual" and involves victims who are "minors," as Congress defined that term for the purposes of § 2252A (that is, those under age eighteen). In other words, it is obviously true that if the Tennessee statute criminalized nonsexual conduct or covered victims up to the

---

[17] While *Colson* involved the interpretation of the phrase "abusive sexual conduct involving a minor" in 18 U.S.C. § 2252A(b)(1), *Diaz-Ibarra* interpreted the phrase "sexual abuse of a minor" in the sentencing guidelines. *See Colson*, 683 F.3d at 509; *Diaz-Ibarra*, 522 F.3d at 345. Thus, *Colson* made clear that we may rely on precedent interpreting "sexual abuse of a minor" when seeking to understand "abusive sexual conduct involving a minor." *Colson*, 683 F.3d at 510–11.

23

age of, say, twenty, it would be categorically broader than § 2252A's phrase, "abusive sexual conduct involving a minor." My friends in the majority and I are in full agreement that the Tennessee statute is a categorical match for "sexual conduct involving a minor." 18 U.S.C. § 2252A(b)(1).

But § 2252A speaks not of *all* sexual conduct involving a minor, but of *abusive* sexual conduct involving a minor. *Id.* And "[t]he phrase 'abusive sexual conduct involving a minor or ward' must be a subset of all 'sexual conduct involving a minor or ward'"; otherwise, the word "abusive" is superfluous. *United States v. Osborne*, 551 F.3d 718, 719 (7th Cir. 2009). In other words, the key question is not just whether the sexual conduct involves a minor, but whether it involves a minor *and is abusive* (that is, involves "physical or nonphysical misuse or maltreatment"). To be a categorical match, we need both.

Accordingly, I find the majority's footnoted assertion that my view does anything other than "measure the Tennessee statute against our agreed-upon definition" rather perplexing. Majority Op. at 8 n.6. The recidivist enhancement requires "abuse," which, we agree, requires "physical or nonphysical misuse or maltreatment" of the minor in question. Nothing in my analysis seeks to redefine that term. My point is that the *majority*'s view fails to apply this definition because it inappropriately *assumes* there is categorically misuse or maltreatment involved in a violation of the Tennessee statute. But as I discuss below, the majority's analysis cannot withstand scrutiny in light of Supreme Court and Fourth Circuit precedent.

Turning to the question of abuse, there is no doubt that much sexual conduct involving minors is inherently abusive. For example, we held in *United States v. Colson*

24

that a Virginia child-pornography-production offense categorically related to the misuse or maltreatment of individuals under the age of eighteen. *Colson*, 683 F.3d at 512. This is unsurprising, given the Supreme Court's longstanding recognition that the production and distribution of child pornography is inherently abusive. *See New York v. Ferber*, 458 U.S. 747, 758–59 & nn.9–10 (1982). Similarly, we have held that a conviction for the molestation of a child under the age of fourteen categorically qualifies as "misuse or maltreatment" of that child. *See Diaz-Ibarra*, 522 F.3d at 352.

Nevertheless, Congress did not define "abusive" for purposes of § 2252A. Further, our definition—that "abuse" means "physical or nonphysical misuse or maltreatment"—is of little assistance because Tennessee's statute undisputedly covers even consensual sexual conduct. *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013) ("Consent is not a defense to any form of statutory rape."). And normally, consensual sexual conduct is not abusive. *Cf. United States v. Jaycox*, 962 F.3d 1066, 1070 (9th Cir. 2020) ("We have consistently recognized that consensual sexual intercourse with individuals over the age of sixteen is not necessarily physically or psychologically abusive." (internal quotation marks omitted)). Rather, there must be some aggravating factor that renders otherwise consensual sexual conduct *abusive*, such as the permanence of the child pornography at issue in *Colson*. *See Ferber*, 458 U.S. at 759 ("[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."). I fully concur with the majority that the legal impossibility of a victim's consent due to their age renders sexual conduct abusive—sex without consent is abuse. Majority Op. at 11. Where we differ is on how to determine the relevant age of consent.

25

The majority appears to offer two related explanations for why the most innocent conduct criminalized by Tennessee's statute is "abusive," that is, involves "physical or nonphysical misuse or maltreatment": first, that it involves a minor, as defined by § 2252A; and second, that it is criminalized by Tennessee law. But neither explanation is sufficient under applicable precedent. The first conflates the age used to define "minor" (indisputably eighteen under § 2252A) with the age at which otherwise consensual sexual conduct becomes criminal or "abusive" solely because the younger participant is too young to legally consent (eighteen under the Tennessee statute, but undefined in § 2252A), ultimately leading the majority to erroneously disregard the Supreme Court's decision in *Esquivel-Quintana v. Sessions*. The second misapplies the categorical approach. I will elaborate on each error in turn.

A.

Because § 2252A does not define "abusive," the categorical approach instructs us to look to its generic federal definition. Specifically, we must determine what constitutes "generic" "abusive sexual conduct involving a minor" in the context of statutes criminalizing sexual conduct *solely based on the ages of the participants*.

Luckily, a unanimous Supreme Court spoke clearly to this point in 2017. After evaluating dictionaries, related federal law, and state criminal provisions, the Court concluded that, "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the generic federal definition of sexual abuse of a minor requires that the victim be *younger than 16*." *Esquivel-Quintana v. Sessions*, 137

S. Ct. 1562, 1568 (2017) (emphasis added). The Tennessee statute is categorically broader than this definition because it sets the age of consent at eighteen.

Certainly, *Esquivel-Quintana* involved a different statute, the Immigration and Nationality Act.[18] But the same evidence mandates the same conclusion here: dictionaries, related federal law, and state criminal provisions continue to point toward sixteen as the generic age of consent.

Today, "a robust majority of American jurisdictions"—some thirty-two states and the District of Columbia—set their age of consent at sixteen, and ten others define statutory rape so as to exclude consensual intercourse between a seventeen-year-old and a twenty-one-year-old.[19] *Rangel-Castaneda*, 709 F.3d at 377. "Bolstering this consensus, both the Model Penal Code and *Black's Law Dictionary* recognize sixteen as the default age of

---

[18] *See* 8 U.S.C. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii).

[19] *See Rangel-Castaneda*, 709 F.3d at 377–78 & nn.1–2. In addition to the thirty-two states that set the age of consent to sexual activity at sixteen, seven states set the age of consent at seventeen. *Id.* at 378 n.2. The remaining eleven states set the age of consent at eighteen, *id.* at 378, but three of those would not criminalize consensual sexual activity between a seventeen-year-old and a twenty-one-year-old, *see* Del. Code Ann. tit. 11, § 770(a)(2) (2021) (setting a minimum age of prosecution of thirty for sexual acts with an individual who is at least sixteen); Fla. Stat. Ann. § 794.05(1) (2021) (setting the minimum age of prosecution for "engag[ing] in sexual activity with a person 16 or 17 years of age" at 24); Utah Code Ann. § 76-5-401.2(2) (2021) (setting the minimum age differential for "[u]nlawful sexual conduct with a 16- or 17-year-old" at seven years if the defendant "knew or reasonably should have known the age of the minor," and otherwise at ten years). Thus, the most innocent conduct criminalized under Tennessee's 1993 statute would not be criminal today in forty-two states or the District of Columbia. *See also Esquivel-Quintana*, 137 S. Ct. at 1571, 1573–76 (collecting statutes showing that, in 1996—the year § 2252A was enacted—forty states and the District of Columbia set the age of consent at seventeen or younger).

consent." *Id.* at 378 (citing Model Penal Code § 213.3(1)(a); *Statutory Rape*, Black's Law Dictionary (9th ed. 2009); *Age of Consent*, Black's Law Dictionary (9th ed. 2009)). Further, a federal statute, 18 U.S.C. § 2243(a), prohibits "[s]exual abuse of a minor" in the form of "knowingly engag[ing] in a sexual act" with a minor who is at least twelve but not yet sixteen and is at least four years younger than the perpetrator.[20]

Reviewing the same evidence as the Supreme Court did in *Esquivel-Quintana* must lead us to the same conclusion: that "consensual sexual conduct involving a younger partner who is at least 16 years of age does not qualify as" abusive sexual conduct involving a minor pursuant to § 2252A(b)(1). *Esquivel-Quintana*, 137 S. Ct. at 1572. No surprise, then, that the Ninth Circuit recently held that a similar California statute, which (like Tennessee's) criminalizes "consensual intercourse between a twenty-one-year-old and someone nearly eighteen," is "not a categorical match to the generic federal definition of sexual abuse of a minor." *Jaycox*, 962 F.3d at 1068, 1070 (interpreting Cal. Penal Code § 261.5(c) (2000) for purposes of the enhancement under 18 U.S.C. § 2252(b)(1), which includes the same relevant language as § 2252A(b)(1)).

Seeking to avoid this conclusion, the majority dismisses *Esquivel-Quintana*'s clear language as turning on the meaning of the word "minor," which was undefined in the statute at issue in *Esquivel-Quintana* and which, we all agree, is set at under eighteen by § 2256(1). Majority Op. at 12–13. But that simply misreads the Court's opinion. In noting

---

[20] Another statute, 18 U.S.C. § 2241, prohibits sexual acts against a person of any age by force or threat, and also prohibits sexual acts involving children under the age of twelve.

28

that, "[w]here sexual intercourse is abusive solely because of the ages of the participants, the victim must be younger than 16," the Court also explained that "the generic crime of sexual abuse of a minor *may include a different age of consent* where the perpetrator and victim are in a significant relationship of trust." *Esquivel-Quintana*, 137 S. Ct. at 1572 (emphasis added). Plainly, the Court did not mean that the word "minor" would have a different meaning if the perpetrator had a significant relationship of trust with the victim. Instead, the question was whether the relevant conduct constituted "sexual abuse of a minor" because one participant was legally unable to consent—which could occur because the younger party was under the age of sixteen, or under a different age, depending on other circumstances such as the relationship between the parties.

So *Esquivel-Quintana* cannot be distinguished on the basis that it sought to define "minor" in the absence of a statutory definition of *that* term. Rather, the Court in *Esquivel-Quintana* was tasked with defining the full phrase "sexual abuse of a minor"—a phrase that, like "abusive sexual conduct involving a minor" in § 2252A(b)(1), was undefined by the statute in question. *See id.* at 1567 (noting that the Immigration and Nationality Act "does not expressly define *sexual abuse of a minor*" and that the key question the Supreme Court was analyzing was "whether a conviction under a state statute criminalizing consensual sexual intercourse between a 21-year-old and a 17-year-old qualifies as *sexual abuse of a minor* under" that Act (emphases added)). And the most innocent conduct criminalized by the Tennessee statute simply does not constitute "sexual abuse of a minor" under *Esquivel-Quintana*'s articulation of the generic federal meaning of that phrase for

29

offenses rendering "sexual intercourse . . . abusive solely because of the ages of the participants." *Id.* at 1572.

The majority also implicitly distinguishes *Esquivel-Quintana* because the Supreme Court relied on 18 U.S.C. § 2243 in defining "sexual abuse of a minor," a statute the majority finds unhelpful to Hardin's case here. "To the contrary," the majority writes, § 2243 "indicates Congress knows how to limit sexual abuse of a minor to victims under sixteen" when it wants to—whereas § 2252A(b)(1) uses a definition of "minor" that includes all those under the age of eighteen. Majority Op. at 13.

I disagree. The statutes can more plausibly be read *together* to support the view that *this form* of abusive sexual conduct requires a victim under the age of sixteen. Section 2252A(b)(1) refers to "abusive sexual conduct involving a minor," that is, someone under age eighteen. Section 2243 provides one form of such abusive sexual conduct: "knowingly engag[ing] in a sexual act" with someone who is at least twelve but not yet sixteen, and who is at least four years younger than the perpetrator. Another statute, § 2241, provides another form: "knowingly engag[ing] in a sexual act" with a child who is not yet twelve. In other words, § 2243 merely suggests one type of "abusive sexual conduct" covered by the § 2252A(b)(1) enhancement. There is no contradiction because § 2243 does not seek to define *all* forms of "abusive sexual conduct" covered by § 2252A(b)(1), some of which will cover victims older than sixteen but not yet eighteen.

This view of the two statutes is supported by their shared history. Notably, in *Esquivel-Quintana*, the Supreme Court emphasized that Congress expanded § 2243 to

30

cover all those under the age of sixteen[21] "in the same [1996] omnibus law that added sexual abuse of a minor to the [Immigration and Nationality Act]." *Esquivel-Quintana*, 137 S. Ct. at 1570. Congress enacted our provision, § 2252A, in that very same omnibus law. *See* Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, §§ 121(3), 121(7), 321, 110 Stat. 3009–28, 3009–31, 3009–627 (1996). Plainly, Congress was worried about all sexually abusive conduct involving children under the age of eighteen. But just as plainly, in Congress' view, one *form* of such abuse was otherwise consensual sexual conduct with children under the age of consent—which it set at sixteen.

Of course, the Supreme Court concluded that it was not necessary or advisable to "import[] [§ 2243(a)] wholesale" into the Immigration and Nationality Act, and I would hold the same to be true here. *Esquivel-Quintana*, 137 S. Ct. at 1571. Still, I would follow the Supreme Court in "rely[ing] on § 2243(a) for *evidence* of the meaning of sexual abuse of a minor, but not as providing the complete or exclusive definition." *Id.* (emphasis added). In other words, § 2243 provides one piece of evidence about the generic federal meaning of "abusive sexual conduct involving a minor" in § 2252A(b)(1); as in *Esquivel-Quintana*, dictionaries and state criminal codes constitute other relevant evidence. And all of that evidence points to the same conclusion: "Where sexual intercourse is abusive solely because of the ages of the participants, the victim must be younger than 16." *Id.* at 1572.

---

[21] As the Court also noted, "[t]o eliminate a redundancy, Congress later amended § 2243(a) to revert to the pre-1996 language," but "[t]hat amendment does not change Congress' understanding in 1996." *Esquivel-Quintana*, 137 S. Ct. at 1571 n.2.

31

In sum, the fact that there is a statutory definition provided for the word "minor" in § 2252A does not render *Esquivel-Quintana* irrelevant. We all agree that the Tennessee statute's inclusion of victims up to the age of eighteen does not render it overbroad as to the definition of "minor." But, of course, consensual sexual conduct is only "misuse or maltreatment" so as to be "abusive" if there is something abusive about the conduct. In the context of statutory rape statutes premised solely on the ages of the parties, that "something" is the legal inability of the minor to consent. And the generic federal definition of the age of consent is sixteen. Thus, the Tennessee statute covers more conduct than does § 2252A(b)(1), and it cannot serve as a predicate.

B.

The majority's logic also suffers from a second fatal flaw: it centers the analysis on what Tennessee defines as criminal, rather than on the generic federal definition of "abusive sexual conduct." *See* Majority Op. at 11–12. But our obligation under the categorical approach is to ensure that Tennessee's law does not sweep more broadly than the generic federal definition. *See Esquivel-Quintana*, 137 S. Ct. at 1568 ("Under [the categorical] approach, we ask whether 'the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding [enumerated offense].'" (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted))).

As it happens, Tennessee's law *does* sweep unusually broadly. The majority asserts that "statutory rape, even by its most innocent conduct, involves a person under the age of eighteen." Majority Op. at 10. While technically true, this statement is misleading: as

32

discussed above, in most states, statutory rape requires a victim under the age of *sixteen*. And more to the point, § 2252A(b)(1) does not name "statutory rape" as a qualifying predicate; it speaks of "abusive sexual conduct involving a minor."[22] So even if *all* states' statutory-rape statutes swept as broadly as Tennessee's does, we would still have to determine whether the minimum conduct criminalized by those statutes constituted abusive sexual conduct. And the Supreme Court has answered that question in the negative.

In this light, it becomes clear that the majority's argument about the effect of consent is beside the point. The majority contends that since consent is no defense to statutory rape, it would be "illogical" for consent to exclude a statutory-rape offense from the realm of "abusive" conduct. Majority Op. at 11. But this argument responds to the wrong question, which is not whether *Tennessee* considers consent relevant to criminality or abusiveness, but whether Tennessee's statutory-rape law criminalizes more conduct than qualifies as abusive under *the generic federal definition* of "abusive sexual conduct involving a minor." It may be true that this Court's definition of "misuse or maltreatment" sweeps more broadly than "a colloquial understanding of 'abusive[,]'" but the majority provides no support for its bare conclusion that "sex with a seventeen-year-old victim, even if consensual,"

---

[22] What's more, this Court has already interpreted the phrase "statutory rape" in the federal sentencing guidelines—and concluded that statutory rape under Tennessee law is not a categorical match, because the "'generic, contemporary meaning' of statutory rape sets the general age of consent at sixteen years old." *Rangel-Castaneda*, 709 F.3d at 375 (quoting *Taylor*, 495 U.S. at 598). The majority's interpretation thus leads to an oddity: if Congress had specifically listed "statutory rape" as a predicate offense in § 2252A, our precedent would compel the conclusion that Hardin's prior conviction would not qualify. And yet the majority reaches the opposite conclusion where Congress has *declined* to enumerate "statutory rape." That can't be right.

33

automatically constitutes "incorrect or careless use" or "wrong or improper use," or for its similar assertion that "the most innocent conduct here stands in some relation to physical misuse or maltreatment for a purpose associated with sexual gratification." *Id.* at 10–11.

No support, that is, except for its state-law illegality. *See id.* (noting that consent "is of no moment *for purposes of the Tennessee statute*" and concluding that "*pursuant to the Tennessee statute*, sex with a seventeen-year-old victim, even if consensual," constitutes misuse (emphases added)). But such reliance is improper under the categorical approach. In suggesting the incorrectness or illegality of a course of conduct for federal sentencing-enhancement purposes arises from its proscription under Tennessee law, the majority "turns the categorical approach on its head by defining the generic federal offense of [abusive sexual conduct involving a minor] as whatever is illegal under the particular law of the State where the defendant was convicted." *Esquivel-Quintana*, 137 S. Ct. at 1570. The "unjust and odd result" of the majority's view is that "conduct that is perfectly legal for some people"—that is, twenty-one-year-olds in forty-two states and the District of Columbia—"could subject many others in neighboring states to years upon years in federal prison." *Rangel-Castaneda*, 709 F.3d at 377 (internal quotation marks and alterations omitted). As noted, this is precisely the kind of nonuniformity in federal sentencing that the categorical approach is meant to avoid. *Id.* (citing *Taylor*, 495 U.S. at 591–92).

### C.

To be clear, I voice no opinion as to the appropriate age of consent that ought to apply under criminal law. Nor do I express any "opinion[] on the merits and policy of the recidivist enhancement." Majority Op. at 8 n.6. Those are questions for legislatures to

34

answer. My point is only that legislatures, both state and federal, have spoken—and so did the Supreme Court, when, taking account of that near-unanimous legislative action, it interpreted the generic federal definition of "sexual abuse of a minor." Tennessee is, of course, within its rights to consider sexual acts between seventeen-year-olds and twenty-one-year-olds criminal.[23] And Congress would be within its rights to permit a conviction under that Tennessee law to serve as a predicate for federal sentencing purposes. It simply has not done so under the current iteration of § 2252A(b)(1), as properly understood in light of the categorical approach. Accordingly, "[w]e simply [should] not accept the government's attempt to justify imposition of a steep . . . sentencing enhancement [tripling the mandatory minimum sentence] for actions that are entirely lawful in [forty]-two states and the District of Columbia, as well as under federal law." *Id.* at 381.

### III.

That brings us to the second disputed aspect of § 2252A: its use of the words "relating to." *See* 18 U.S.C. § 2252A(b)(1) (sentencing enhancement applies to those with a prior conviction "under the laws of any State *relating to* . . . abusive sexual conduct involving a minor" (emphasis added)). Those words admittedly have a "broadening effect" that alters the categorical-approach analysis, *Jaycox*, 962 F.3d at 1070, such that a state crime "does not need to satisfy a *narrow definition* of sexual abuse in order to qualify as a

---

[23] *See Rangel-Castaneda*, 709 F.3d at 379 ("Tennessee retains the ability to define the state crime of statutory rape in the manner it desires. And yet, when it comes to the common meaning of that offense for federal sentencing enhancement purposes, the gap between an age of consent of sixteen versus eighteen is simply too consequential to disregard, and the majority of states adopting the former age is too extensive to reject.").

predicate offense," *United States v. Spence*, 661 F.3d 194, 200 (4th Cir. 2011) (emphasis added). Nevertheless, as the Supreme Court has emphasized, the words "relating to" are not limitless. *Mellouli v. Lynch*, 575 U.S. 798, 811–12 (2015). And here, the majority's interpretation of "relating to" contains no apparent limiting principle, as it sweeps so broadly that it deprives the statutory term "abusive" of any meaning.

The majority looks to this Court's decision in *United States v. Colson* for the "parameters" of what it terms "the categorical approach 'and then some.'" Majority Op. at 9. The problem is that *Colson* involved a very different predicate conviction. And in the years since *Colson*, the Supreme Court has noted that context "may tug in favor of a narrower reading" of the words "relating to." *Mellouli*, 575 U.S. at 812 (internal quotation marks and alterations omitted). Such context exists here.

*Colson* involved a conviction under a Virginia child-pornography-production statute that forbade, among other things, depictions of "lewd exhibitions of nudity" of minors. *Colson*, 683 F.3d at 510. As the Supreme Court recognized long ago, the production of child pornography "is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758; *see also Paroline v. United States*, 572 U.S. 434, 439–40 (2014) (noting that child-pornography production "involves child abuse"); *United States v. McCauley*, 983 F.3d 690, 696 (4th Cir. 2020) (noting "the deeply harmful effects that [child-pornography] production can wreak on individual lives and on our social fabric"); *cf. Ferber*, 458 U.S. at 759 ("The distribution of photographs and films depicting sexual activity by juveniles is *intrinsically related to* the sexual abuse of children[.]" (emphasis added)). Thus, *Colson* was not a close case. Indeed, this Court "ha[d] little

difficulty concluding" that the defendant's conviction, while not "*equivalent to* the production of child pornography *under federal law*," was *related* to the sexual abuse of minors. *Colson*, 683 F.3d at 511 & n.2.

By contrast, statutory rape, by its nature, avoids the blurry twilight zone of conduct that plausibly "relates to" sexual abuse. By grounding illegality solely in the ages of the participants, statutory rape creates a sharp binary between conduct that is punishable (and, therefore, presumably abusive in the eyes of the legislature) and conduct that is perfectly legal and non-abusive (consensual sexual conduct between parties legally capable of consenting). Moreover, many statutory-rape laws, including Tennessee's, are strict-liability crimes. The sole determinates of criminal liability under such laws are the birthdates of the victim and the perpetrator.

This distinguishes statutory rape from other sexual crimes, which may involve gradations of culpability along either the actus reus or mens rea dimensions. They might ask about the intent of the perpetrator. Or they might involve complex evaluations of whether what happened constitutes a crime—such as, under the statute at issue in *Colson*, whether photographs involved "lewd" depictions of nudity. For that reason, this Court has noted that "[t]here are good reasons to treat statutory rape differently from other crimes." *Thompson v. Barr*, 922 F.3d 528, 534 (4th Cir. 2019) (distinguishing *Esquivel-Quintana* because *Esquivel-Quintana*, like the case before us now, involved a statutory-rape offense).

Outside the statutory-rape context, then, it makes perfect sense for the words "relating to" to, effectively, blur the edges of the categorical approach—or, as the Ninth Circuit put it, to "allow certain flexibility at the margins." *Jaycox*, 962 F.3d at 1070. In

other words, for most sexual crimes, conduct that might not squarely *constitute* sexual abuse for federal purposes may still *relate* to sexual abuse. Congress presumably included the words "relating to" in order to capture such conduct—like the psychologically damaging, if not federally criminal, production of "lewd exhibitions of nudity" at issue in *Colson*. *Colson*, 683 F.3d at 510; *cf. Ferber*, 458 U.S. at 758 & n.9.

But statutory rape presents clear lines: the most innocent conduct it criminalizes is conduct that would *definitively* be neither criminal nor abusive if both participants were legally able to consent. Put differently, the age of consent creates a clear division between criminal and noncriminal conduct. To hold that "relating to" encompasses conduct across even *that* line divests the phrase of any real meaning. The statute might as well say that *any* conviction for *any* "sexual conduct involving minors" can serve as a predicate.

But it doesn't. And because it doesn't, "the Government's construction of [§ 2252A] stretches to the breaking point, reaching state-court convictions, like [Hardin]'s, in which [Supreme Court precedent establishes that no 'abusive' conduct categorically] figures as an element of the offense." *Mellouli*, 575 U.S. at 811 (declining to adopt a meaning of "relating to" that would read words out of the statute); *see also United States v. Schopp*, 938 F.3d 1053, 1066 (9th Cir. 2019) (interpreting *Mellouli* as holding that "relating to" "does not permit an expansion beyond the substantive linchpin element of the federal generic crime . . . [,] although it does permit inclusion of various kinds of conduct involving that generic crime"); *Jaycox*, 962 F.3d at 1070–71 (applying *Schopp* to § 2252(b)(1)); *cf. Rangel-Castaneda*, 709 F.3d at 377 ("[T]he disparity between the predicate state crime[, Tennessee's statutory-rape provision, which sets the age of consent at eighteen,] and the

38

defendant's contended generic offense here[, which sets the age of consent at sixteen,] simply cannot be considered insignificant. . . . [T]he contrast between age sixteen and age eighteen is highly consequential[.]"). In other words, the fact that the majority's interpretation of the words "relating to" would functionally erase "abusive" from the statute provides context "tug[ging] . . . in favor of a narrower reading" of the words "relating to," at least when it comes to statutory-rape laws like Tennessee's.[24] *Mellouli*, 575 U.S. at 812 (quoting *Yates v. United States*, 574 U.S. 528, 539 (2015)).

For that reason, I would join our sister circuit in concluding that the most innocent conduct criminalized by a statute like Tennessee's 1993 statutory-rape provision does not categorically relate to abusive sexual conduct involving a minor. *Jaycox*, 962 F.3d at 1070–71 (explaining that California's statutory-rape law did not "relate to" abusive sexual conduct involving a minor because the state crime and generic federal definition differed as to a "core substantive element" of the offense—the age at which otherwise consensual sex became unlawful).

IV.

Because the Tennessee law under which Hardin was convicted does not categorically relate to abusive sexual conduct involving a minor, I would vacate Hardin's sentence and remand for resentencing without application of the § 2252A(b)(1) enhancement. Because the majority holds otherwise, I respectfully dissent.

---

[24] Further, to the extent § 2252A(b)(1) is ambiguous, the rule of lenity counsels in favor of Hardin's interpretation.